IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

GILBERT V. GILBERT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SUSANNAH J. GILBERT, NOW KNOWN AS SUSANNAH J. DE FEO, APPELLANT,

V.

BRANDON L. GILBERT, APPELLEE.

Filed January 30, 2024.    No. A-23-257.

Appeal from the District Court for Douglas County: TRESSA M. ALIOTH, Judge. Affirmed.

Susannah J. De Feo, pro se.

Stephanie Weber Milone, of Milone Law Office, for appellee.

PIRTLE, Chief Judge, and MOORE and BISHOP, Judges.

MOORE, Judge.

## I. INTRODUCTION

Susannah J. Gilbert, now known as Susannah De Feo, appeals from an order of modification entered by the district court for Douglas County in this custody action between Susannah and Brandon L. Gilbert regarding their daughter. Susannah challenges the court's orders regarding the denial of her request to relocate the child to North Carolina, granting physical custody and final decisionmaking authority to Brandon, and requiring the parties to obtain a passport for the child. Susannah also asserts error regarding various evidentiary rulings made by the district court during the modification trial. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

### 1. DECREE AND FIRST MODIFICATION

Susannah and Brandon were married in 2012 and together have one child, Taylence, born in 2015.

- 1 -

Susannah filed for dissolution of marriage and the district court entered a stipulated decree on October 30, 2018. Pursuant to their agreement, the parties were awarded joint legal custody and Susannah was awarded primary physical custody. Susannah was also awarded sole decisionmaking authority related to Taylence's education, provided that the decisions were in the best interests of the child.

The district court awarded parenting time with Taylence per an attached stipulated parenting plan. At the time the decree was entered, Brandon was a police officer on a rotating schedule and the parenting plan provided that his parenting time was to be divided between his 2 days off every 12 days, allowing for parenting time to occur from 8:30 a.m. to 8:30 p.m. The parenting plan also included provisions regarding vacations, granting each parent a specific number of days to go on vacation with Taylence and stating that, "[v]acation is to be taken to domestic destinations only, unless the other (non-vacationing) parent gives consent." The parenting plan prohibited a parent from moving Taylence out of Nebraska without court permission and stated that both parents understood that any permanent changes affecting the terms of the parenting plan must be approved by the court to be binding and enforceable.

Shortly after the decree was entered Susannah removed Taylence from Nebraska, first to South Carolina and then to North Carolina, without court permission. On June 27, 2019, Brandon filed a complaint to modify the parties' decree, seeking Taylence's return to Nebraska and physical custody. Susannah filed an answer and counterclaim, seeking sole custody of Taylence and permission to remove Taylence from Nebraska to North Carolina. Brandon later filed a contempt action against Susannah, alleging that Susannah's actions were a willful violation of the decree. Susannah thereafter filed a contempt action against Brandon. These complaints and filings by the parties do not appear in our record on appeal, however their general claims are referenced by the district court's January 21, 2021, order modifying the decree.

On September 2, 2020, the district court entered a temporary order related to Brandon's complaint and Susannah's counterclaim. The court noted that trial on the matter had commenced on August 21 but had not been completed. The court nevertheless found that based upon Susannah's testimony, she had not shown there to be a legitimate reason for removal of Taylence from Nebraska. The legitimate reason offered by Susannah was consent by Brandon to the move. The court found that even if Brandon had consented to Taylence's removal, "there is no Nebraska case this Court is aware of where an alleged consent to the removal would override the lack of the Court's not having or being able to give permission for the removal." The court also noted that the parties' parenting plan explicitly stated that a parent may not move the child from Nebraska without permission by the court, nor could a permanent change to the parenting plan be made without court approval.

The district court acknowledged that Susannah's job had been terminated in Nebraska but observed that there was no job offer in either South Carolina or North Carolina prompting Susannah's move. In fact, Susannah had not found employment for approximately 3 months after her move. The court also made reference to Susannah's second marriage, stating that the court could not factor in the subsequent marriage since that marriage had not happened at the time of the removal.

The district court ordered that Taylence be returned to Nebraska and at the time of her return the parties would operate under the 2018 decree and parenting plan. Taylence was to be relocated by no later than October 31, 2020.

The first modification trial concluded on December 2, 2020. The district court entered a final order modifying the decree on January 21, 2021. The court found that Brandon had proven a material change in circumstance since the entry of the decree and that the best interests of Taylence warranted a change in parenting time and physical custody. However, the court determined that there had been no change in material circumstances to warrant modifying the decree's award of joint legal custody. The court awarded the parties joint physical custody, giving Susannah parenting time 9 out of every 14 days, Brandon parenting time 5 out of every 14 days, and dividing Taylence's summer break equally between the parties in alternating weeks. The court also dismissed the parties' respective contempt actions, finding that Brandon had failed to carry his burden of proof that Susannah's actions were in willful violation of the decree and that Brandon was never served with copies of Susannah's verified motion or show cause order.

2. SECOND COMPLAINT FOR MODIFICATION AND REMOVAL

On August 27, 2021, Susannah filed a complaint for modification and removal, seeking an award of sole legal and physical custody of Taylence and an order allowing Susannah to remove Taylence to North Carolina. Susannah alleged that she had legitimate reasons for requesting Taylence's removal from Nebraska including the enhancement of Taylence's quality of life and housing conditions; that Taylence's emotional and physical needs would be more easily attended to; improvement in the relationship between Taylence and her parents and between the parties themselves; that Brandon's parenting time would be impacted "to the benefit" of Taylence; and that Taylence has expressed a preference to live in North Carolina. The complaint further asserted that Taylence's removal would be in her best interests.

Susannah also alleged a material change in circumstances that warranted a modification of the parties' custody arrangement. These allegations included a deficiency in Brandon's home environment, emotional relationship with Taylence, and capacity to provide parental care; Taylence's preference to be placed in Susannah's primary care; Brandon's failure to use all his allocated time to parent Taylence; and Brandon having frustrated Susannah's ability to exercise her right of first refusal.

Brandon filed an answer and counterclaim in which he asserted that Susannah's complaint was frivolous, made in bad faith, and made for the purpose of harassing Brandon. Brandon requested a finding regarding the motivation for Susannah's complaint and for an award of attorney fees for having to defend against the complaint, or in the alternative, for dismissal of the complaint. Brandon's counterclaim requested another modification of the decree, awarding him legal and physical custody, and an order directing Susannah to contribute to Brandon's fees and costs. Brandon alleged that Susannah's ongoing efforts to alienate Taylence from Brandon and to interfere with Brandon's parenting time constituted a material change in circumstance since the first modification of the decree.

Susannah also filed a request for specific findings of fact and conclusions of law related to the district court's determination of the modification and removal issues.

## 3. TRIAL

Trial in the modification proceedings was held over 3 days in February 2023. Susannah represented herself at trial. Both Susannah and Brandon testified, and the following evidence was adduced. Additional details of the trial evidence are referenced as necessary in our analysis.

In October 2018, Susannah moved with Taylence to the Carolinas. In Susannah's complaint, she lists the addresses where Taylence lived over the past 5 years. Taylence lived in Omaha, Nebraska, from the time of her birth until October 2018; in South Carolina from October 2018 until December 2018; and in three different addresses in North Carolina from December 2018 until September 2020. At trial, Susannah acknowledged that she had changed Taylence's residence from Nebraska to South Carolina and then North Carolina without the required permission of the court, but testified that she had Brandon's permission to remove Taylence. Brandon did not testify regarding whether he gave consent for Susannah to remove Taylence from Nebraska.

Susannah remarried in July 2020 in North Carolina, while the first modification complaint was pending in Nebraska. Susannah conceded that though she was aware that Brandon wanted Taylence to return to Nebraska because of the parties' pending litigation, Susannah did not voluntarily return Taylence until she was court-ordered to do so in September 2020.

Following the entry of the order directing Taylence to be returned to Nebraska, Susannah and her husband moved to Nebraska and lived with Taylence in Elkhorn. Susannah's husband was employed while living in Nebraska but quit his job and moved back to North Carolina in June 2021 to pursue a better job opportunity, as well as to care for his father who had been diagnosed with stage IV melanoma. Susannah testified that her husband held two jobs while in Nebraska, one at an insurance company where he earned commission and a later job at a storage unit where he earned $15 an hour. Susannah testified that her husband now had a higher paying job in North Carolina and the district court received a paystub of Susannah's husband dated December 23, 2021. The paystub reflects that her husband works in environmental consulting at a base rate of $19 an hour and receives overtime pay and benefits. Susannah also testified that she thought her husband's wage had recently been increased to $21 an hour.

When Susannah moved to Elkhorn from North Carolina in 2020, she acquired a 12-month temporary position at 3M but left that job after 10 months. Susannah testified that she tried to find gainful employment in the Omaha area, though she had only been successful in obtaining a position with the Nebraska Department of Health and Human Services in Columbus, Nebraska. The district court received screen shots of an online job board, displaying positions for which Susannah had apparently applied without success. Susannah had not been employed since leaving 3M. She would occasionally drive for Uber while she was "waiting to move." The court also received exhibits demonstrating Susannah's personal expenses while living in Nebraska.

Susannah later moved with Taylence to Papillion, Nebraska, in November 2022. Susannah and Taylence were living with a family with whom they were acquainted along with another adult woman who was unrelated to the family. Susannah acknowledged that moving Taylence to Papillion made her ineligible to attend her Elkhorn public school in the next academic year.

Both Susannah and Brandon testified to Taylence's behavioral issues. Taylence has displayed aggressive and disruptive behaviors at school such as rolling on the floor, kicking, biting,

punching, cursing at teachers, and stabbing teachers with pencils. Taylence also has an inability to focus. Brandon testified that Susannah made decisions regarding Taylence's behavioral treatment plan, therapies, and the selection of clinicians without his consultation.

An individualized education plan was instituted for Taylence while she was in first grade and both parents saw an improvement in Taylence's ability to engage in lessons. Taylence's behavior started to escalate again the following year when she was in second grade. Susannah observed that Taylence's escalation occurred after the first modification order as Taylence was upset about having to be away from Susannah more, while Brandon attributed the escalation to the parties being engaged in litigation, Taylence having to move constantly, and Taylence having parents who did not get along. The parents also disagreed about whether allowing Taylence to participate in extracurricular activities was a privilege that had to be earned through good behavior, per Susannah, or a way to provide normalcy and model teamwork, per Brandon.

An evaluation of Taylence was conducted on December 19, 2022, at the Monroe-Meyer Institute. The evaluation found that Taylence demonstrates symptoms consistent with a diagnosis of ADHD and oppositional defiant disorder. The evaluation recommended that Taylence and her family participate in outpatient behavioral therapy addressing compliance, emotional regulation, and reducing problem behaviors. The evaluation provided various examples of accommodations that could be made at home and school to benefit Taylence. At the time of trial, Taylence was working with behavioral specialists and medication for her probable ADHD was being explored. Susannah was holding a spot with a behavioral therapist in North Carolina but could not recall the name of the practice.

Susannah and Brandon both testified to communication challenges and difficulty in co-parenting Taylence. Brandon testified that Susannah frequently made decisions regarding Taylence without his feedback, while he made an effort to consult Susannah and to find a middle ground. Susannah described Brandon as dismissive and aggressive at times and stated that he is controlling regarding her parenting decisions. Susannah did not intend to withhold information from Brandon but indicated that he did not remember specific appointment information and would continually repeat his requests for the same information already provided by Susannah.

Brandon believed that Susannah was discussing the parties' litigation with Taylence. Brandon offered a note he received from Taylence's school which includes a quotation from Taylence that reads, "Daddy made me do this because he made me move from North Carolina." The district court received the exhibit, number 98, over Susannah's objection.

There was also testimony regarding additional complaints that Susannah made against Brandon. Less than 1 day after the order denying Susannah's first complaint to modify and remove, she made an internal affairs complaint and a child abuse and neglect complaint against Brandon. Both complaints were dismissed as unfounded. Susannah also sought a domestic abuse protection order against Brandon, but the petition for a protection order was dismissed when Susannah failed to appear for the hearing. Only Susannah's internal affairs complaint appears in our record, though Susannah admitted that she made the other complaints against Brandon.

Brandon also found numerous tracking devices in Taylence's items including inside of Taylence's glasses case and sewn into a false bottom of her backpack. Brandon continued to find tracking devices even after he asked Susannah to stop putting them in Taylence's items during his parenting time. Apparently, Brandon obtained a court order to stop Susannah from placing the

tracking devices on Taylence, but this order does not appear in our record on appeal. Brandon requested that the district court in this case include an order prohibiting Susannah from using tracking devices.

Susannah presented evidence regarding what Taylence's life would look like in North Carolina. The district court received photographs of the property where Susannah and Taylence would reside. The court also received the home's property record, which reflected that it was owned by two individuals with her husband's last name, presumably her husband's parents. Susannah testified that on the property, she and Taylence have access to four-wheeling, a golf course, and a boat. Because Taylence resided at the home previously, she is comfortable and enjoys her time there.

Susannah testified that she has extended family in North Carolina, including Susannah's mother and grandmother. All Taylence's maternal aunts and uncles live nearby as well as multiple cousins Taylence's age. Susannah also implied that she, Taylence, and her husband would be sharing their residence with her husband's parents.

Susannah planned to enroll Taylence in a year-round charter school in North Carolina and stated that because of the multiple school breaks throughout the year, instead of one long summer break, Taylence would be able to come back to Nebraska to visit Brandon five times a year. Susannah would pay to fly Taylence with a chaperone from North Carolina to Nebraska for parenting time with her father. The district court received photographs of Taylence's prospective school. Taylence previously attended the school when she lived in North Carolina and Susannah stated that Taylence had benefited from the school's small group approach to lessons. Susannah had informed the school of Taylence's behavioral issues and stated that she would give the school Taylence's individualized education plan once she was enrolled. Susannah also testified to the availability of public community events and parks for Taylence. In North Carolina, Taylence would be able to take riding lessons, participate in gymnastics, and take music lessons from Susannah's sister.

Susannah has been Taylence's primary caregiver since her birth. Susannah testified to her consistent involvement in Taylence's medical care and education, including volunteering at Taylence's school in Elkhorn. Susannah believed that Brandon overly relied on his fiancé and his parents to take care of Taylence during his parenting time. Brandon testified that it was beneficial for Taylence to spend time with her grandparents and other adults who love her.

The district court received Susannah's North Carolina early childhood educator certification, which Susannah testified would provide her with expanded job opportunities in North Carolina, as opposed to in Nebraska. Susannah also testified that if she lived in North Carolina she "wouldn't have to work if I did not want to," and so had the ability to provide for Taylence's physical and emotional needs. Susannah testified that she had a job offer in North Carolina at the time she filed her second modification complaint. When asked why a reference to the job offer does not appear in her complaint, Susannah stated that her attorney at the time did not include it.

Susannah did not believe that the relationship between Taylence and either parent would be diminished with her removal to North Carolina. Rather, Susannah believed that the relationships would be enhanced, as Taylence would not have to transition between each parent as frequently and Brandon's "competitive nature" would no longer cause stress to Taylence. Though Brandon's parenting time with Taylence would be impacted, Susanah noted that Taylence would benefit from

a more consistent routine than Brandon could provide. Susannah conceded that in a previously answered interrogatory she stated that decreasing Taylence's time with Brandon would be a good thing. Susannah also conceded that none of Taylence's clinicians had stated that decreasing parenting time with her father would be of benefit to Taylence. Susannah stated that Brandon's emotional relationship to Taylence has been detrimental to her because Brandon does not allow Taylence to express her opinions and has been alienating Taylence from Susannah.

Susannah testified that if the district court denied her permission to remove Taylence from Nebraska to North Carolina, she intended to reside in North Carolina regardless. Susannah acknowledged that if she moved to North Carolina without Taylence, Brandon would have to obtain full custody.

Brandon lives in Plattsmouth, Nebraska, in a private community on a lake. Taylence has her own bedroom in his home. Brandon also has a pontoon boat that he and Taylence enjoy taking on the water. In the summer, Taylence plays on the beach with neighborhood children. Brandon has enrolled Taylence in activities, such as rock climbing, soccer, and swimming lessons. Brandon's parents relocated to Nebraska and live a mile from Brandon's residence. Brandon testified that Taylence has a positive relationship with her grandparents and enjoys baking, reading, and doing outdoor activities together.

Brandon has a fiancé, Betsy, with whom he has been in a relationship for the past 5 years. Brandon testified that Taylence is "extremely comfortable" with Betsy. Brandon has discussed with Taylence that Susannah is her mother, and that when he and Betsy get married, Betsy will become Taylence's stepmother. Betsy does not require Taylence to refer to her as "mom" or "mother." A note written to Taylence by Brandon and Betsy for a classroom award that was signed "Daddy and Betsy," was received into evidence.

Brandon testified that in February 2021, Betsy's parents paid for a trip to the Bahamas and invited Brandon and Taylence to join the family on vacation. However, Susannah declined to sign the paperwork necessary to obtain a passport for Taylence and she was not able to go on the vacation. Brandon asked the district court to find that Taylence be permitted to have a passport and to order Susannah to sign the necessary paperwork.

When the first modification order was entered in January 2021, Brandon was employed as a police officer for the city of Omaha. During that time, Brandon worked nights on a rotating schedule, with 4 days on followed by 2 days off. At the time of trial, Brandon was still a police officer but working as a school resource officer at an Omaha high school. Brandon's work schedule was now 8 a.m. to 3:30 p.m. on weekdays with holidays and weekends off. Brandon described his work schedule as flexible and predictable, allowing him to spend more time with Taylence.

Brandon testified that when Taylence was moved out of state in October 2018, he did not receive all his parenting time under the original decree and saw Taylence only on occasional visits. Brandon believed that Taylence's removal would adversely affect his relationship with her.

Brandon testified that he and Susannah have not discussed where Taylence will go to school if Susannah is again denied permission to remove her. Brandon has researched a variety of public and private schools close to his home in Plattsmouth and Susannah's present residence in Papillion.

## 4. ORDER

The district court entered its second modification order on March 1, 2023. Regarding Susannah's request for permission to remove Taylence from Nebraska to North Carolina, the court first considered whether Susannah had shown a legitimate reason to leave Nebraska. The court noted that Susannah had alleged at trial that she had remarried and that her husband had obtained better employment in North Carolina. However, the court noted that Susannah had not presented any evidence related to the employment of her husband in North Carolina and that Susannah had remarried while the previous modification litigation was pending. Because Susannah had not offered any evidence regarding changes that occurred since the January 21, 2021, modification order was entered, the court denied permission for Susannah to remove Taylence and her complaint was dismissed.

With respect to Brandon's counterclaim seeking legal and physical custody of Taylence, the district court found that a material change of circumstances had occurred, in that Susannah had testified to her intent to move to North Carolina even if the court did not grant permission for Taylence's removal. Because Taylence was in need of immediate care, the court awarded Brandon physical custody, subject to Susannah's parenting time. The court also found that it was in Taylence's best interests for Susannah and Brandon to have joint legal custody, with Brandon having final decisionmaking authority.

The district court ordered both Susannah and Brandon to cooperate as necessary to obtain a passport for Taylence and to provide written notice to the other parent of any travel with Taylence outside of Nebraska and North Carolina, 2 weeks in advance. The court struck the vacation time provision regarding non-domestic travel that appears in the parenting plan of the original decree. The court ordered no GPS monitoring or tracking of Taylence by any device and made other parenting time and child support orders not relevant to this appeal.

Though the district court recognized that Susannah was a self-represented litigant, it ordered that she pay Brandon $6,060 in attorney fees.

Susannah appeals from this second modification order.

## III. ASSIGNMENTS OF ERROR

Susannah, again self-represented, assigns, consolidated and restated, that the district court erred in (1) failing to receive various exhibits offered by Susannah during the modification trial; (2) denying Susannah's request for removal; (3) granting physical custody and final decisionmaking authority to Brandon; (4) ordering that the parties obtain a passport for the child; and (5) awarding attorney fees to Brandon.

## IV. STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record and will be affirmed absent an abuse of discretion. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Id*.

## V. ANALYSIS

### 1. Exhibits Not Received Into Evidence

Susannah assigns that the district court erred in failing to receive various exhibits offered by her during the modification trial. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *In re Estate of Walker*, 315 Neb. 510, 997 N.W.2d 595 (2023). A self-represented litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023).

### (a) Exhibits 18, 19, and 20

Susannah argues that the district court erred in not receiving exhibits 18, 19, and 20 into evidence. The exhibits are emails sent by two individuals identified in the emails as special education teachers at Taylence's Elkhorn school. Attached are forms titled "Taylence's Daily Behavior Data Collection Form" which detail Taylence's behaviors and statements during particular classroom activities. These exhibits are dated from December 9, 2021, through February 2, 2022; from February 3, 2022, through May 19, 2022; and from August 29, 2022, through January 6, 2023, respectively.

Susannah offered exhibits 18 and 19 during direct examination of Brandon. Brandon objected on the basis of insufficient foundation and hearsay. The district court sustained Brandon's objections and Susannah argued that the exhibits were "in accordance with RIT, legally binding document that reports directly from the school that they're required to keep records of." The court again sustained Brandon's foundation objection. While conducting redirect examination of Brandon, Susannah again offered exhibits 18 and 19, and offered exhibit 20 for the first time. Brandon again made a foundational objection which the district court sustained. Susannah argued that the three exhibits were connected to exhibit 98, a handwritten note from the school transcribing a statement made by Taylence and were "the remaining reports that go along with it." The court told Susannah that she could lay additional foundation but that it "can't really help you or give you advice there . . ." Susannah did not lay additional foundation and pursued another line of questioning.

At trial and on appeal Susannah argues that it was improper for the district court to exclude these exhibits after admitting exhibit 98, as it was an incomplete record. The rule of completeness allows a party to admit the entirety of an act, declaration, conversation, or writing when the other party admits a part and when the entirety is necessary to make it fully understood. *Schuemann v. Menard, Inc.*, 27 Neb. App. 977, 938 N.W.2d 378 (2020). The statement made by Taylence appears in its entirety on the sole page offered by Brandon as exhibit 98. We have reviewed all the emails and behavioral forms in the offered exhibits 18, 19, and 20 and conclude that the admitted statement by Taylence was not taken out of context and that the additional 230 pages of emails and behavioral forms do not qualify or explain the admitted portion. Thus, the district court's failure to receive the three exhibits into evidence did not violate the rule of completeness.

Further, Susannah did not provide the necessary foundation for these three exhibits, even after she was given permission to lay additional foundation. No witnesses from the school were

called to verify the documents. Finally, both parties testified extensively regarding Taylence's behavioral problems at school. We find no abuse of discretion in the district court sustaining Brandon's foundation objection to exhibits 18, 19, and 20, and thus not receiving the three exhibits into evidence.

(b) Exhibits 26, 27, 28, 29, and 30

Susannah argues that the district court erred in not receiving exhibits 26, 27, 28, 29, and 30 into evidence. Susannah provided direct testimony that she had suffered financial hardship while living in Nebraska because Brandon had not been paying "child support expenses" sent by Susannah. Brandon objected to this testimony on the basis of relevance, as Susannah had not included allegations regarding child support or childcare expenses in her pleadings. The district court sustained the objection. Susannah then offered exhibits 26 through 30 which she described as "child support expense calculations I've sent to Mr. Gilbert." The five exhibits are documents detailing medical, childcare, and expenses related to Taylence, email correspondence between the parties, and screen shots of bank account statements and online bill payment sites. None of the exhibits are related to Brandon's child support obligation set forth in the original decree. Brandon made another relevancy objection, which the district court sustained.

The admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. See *Jaeger v. Jaeger*, 307 Neb. 910, 951 N.W.2d 367 (2020). Erroneous exclusion of evidence does not require reversal if the evidence would have been cumulative and other relevant evidence, properly admitted, supports the trial court's finding. *Id*.

Susannah offered these exhibits to support her assertion that it was not economically feasible for her to continue living in Nebraska. While these exhibits may have been relevant to the removal issue, there was other evidence in the record which support this contention, including Susannah's testimony that she had difficulty finding employment in Nebraska and that she would not have to be employed in North Carolina. The district court also received into evidence an exhibit detailing Susannah's personal expenses. Thus, even if it was error for the district court to exclude the exhibits about allegedly unpaid child-related expenses, it was not reversible error because the exhibits would have been cumulative. We find that the district court did not abuse its discretion in excluding exhibits 26 through 30. To the extent that Susannah asserts that these exhibits would have shown she had a legitimate reason to leave Nebraska, we address this issue below.

(c) Exhibit 33

Susannah argues that the district court erred in not receiving exhibit 33 into evidence. Exhibit 33 is an email regarding a job offer to Susannah; a substitute teacher position in Taylence's prospective charter school in North Carolina. The email is dated May 25, 2022. Brandon objected as to relevance, which the district court sustained.

Susannah filed her complaint for modification and removal on August 27, 2021. Though she testified that her husband relocated to North Carolina in June 2021 to pursue a better job opportunity, her exhibit related to a job offer extended to her in May 2022, nearly 9 months after her complaint was filed. Susannah's offer of new employment was not in existence at the time she filed a second request to remove Taylence and was therefore not a basis for her request to remove Taylence. Even if the exhibit was relevant to the removal issue, the court heard Susannah's

testimony about a job offer she received in North Carolina. Thus, we cannot say that the district court abused its discretion in sustaining Brandon's relevancy objection to exhibit 33 and not receiving the exhibit into evidence.

### (d) Exhibit 45

Susannah argues that the district court erred in not receiving exhibit 45 into evidence, a report generated on March 23, 2022, showing Brandon's police timecard from January 1, 2021, through March 21, 2022. Susannah testified that she believed that due to his work schedule, Brandon spent little of his allotted parenting time actually parenting Taylence. Exhibit 45 does not demonstrate the hours that Brandon worked, only the date and number of worked hours, and the pay code used for that particular shift. Brandon made several objections to the exhibit, including relevancy. The district court sustained the relevancy objection, noting that Brandon had testified to a change in schedule.

Brandon testified that in January 2021 he was working on a rotating schedule as a police officer, working overnights for 4 days, followed by 2 days off. At the time of trial, Brandon was still a police officer but working as a school resource officer at an Omaha high school from 8 a.m. to 3:30 p.m. on weekdays. Thus, the paystub offered by Susannah was not indicative of Brandon's current schedule. The district court was within its discretion to find exhibit 45 irrelevant.

### 2. REMOVAL

Susannah next assigns that the district court erred in finding that she did not demonstrate a legitimate reason to remove Taylence to North Carolina. Susannah points to the evidence that her husband had moved to North Carolina in June 2021 to pursue a higher paying job opportunity and to care for his father who had recently been diagnosed with skin cancer. Susannah also points to her and her husband's inability to find suitable employment in Omaha, the existence of their extended family in North Carolina, and the escalation of Taylence's behavioral issues, to be legitimate reasons to remove Taylence.

In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. *State on behalf of Ryley G. v. Ryan G.*, 306 Neb. 63, 943 N.W.2d 709 (2020). The purpose of requiring a legitimate reason for leaving the state in a motion to remove a minor child to another jurisdiction is to prevent the custodial parent from relocating the child because of an ulterior motive, such as frustrating the noncustodial parent's visitation rights. *Id.*

### (a) Legitimate Reason

We agree with Susannah that the district court erred in finding that Susannah had not demonstrated a legitimate reason to remove Taylence. Susannah presented evidence that in June 2021, 6 months after the first modification order had been entered, her husband left Nebraska and moved back to North Carolina to pursue a higher paying job and to care for his ill father. Susannah testified that her husband had previously been earning $15 an hour in Nebraska and was now earning $19 an hour, and potentially $21 an hour, in his position. The Nebraska Supreme Court

has found career advancement of a new spouse and the desire to form a new family unit through remarriage as legitimate reasons to remove a child to another jurisdiction. See *State on behalf of Ryley G. v. Ryan G., supra*. Both reasons factor into the situation here.

## (b) Best Interests of Child

However, though Susannah has cleared this threshold, she as a custodial parent must next demonstrate that it is in Taylence's best interest to continue living with her. In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child. *Id*.

Under the second prong of removal analysis, the Nebraska Supreme Court has articulated in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999) three "broad considerations" that should "serve as appropriate guideposts" in a trial court's analysis. To determine whether removal to another jurisdiction is in the child's best interests, a trial court should consider (1) each parent's motive for seeking or opposing the move, (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent, and (3) the impact such a move will have on contact between the child and noncustodial parent when viewed in the light of reasonable visitation. *Korth v. Korth*, 309 Neb. 115, 958 N.W.2d 683 (2021). These three considerations are not exhaustive, nor will they be present in every case. See *id*. It is the moving party's burden to show, by a combination of these considerations, that removal would be in the child's best interests. *Id*.

### (i) Each Parent's Motive

With respect to the first consideration involving the motive of each parent in seeking or opposing the move, from our de novo review we find some evidence that Susannah was seeking to frustrate the custodial rights of Brandon or was otherwise acting in bad faith. Susannah stated in interrogatory answers and in her second complaint to modify and remove that a move to North Carolina, which would significantly reduce Brandon's parenting time, would be "to the benefit" of Taylence. Susannah's placement of several tracking devices on Taylence while she was in Brandon's care also calls into question her ulterior motives. Susannah did not include Brandon in discussions regarding the selection of Taylence's therapies or clinicians. Though Susannah did not admit to discussing the ongoing litigation with Taylence, the note Brandon received from Taylence's school was evidence that Taylence blamed Brandon for her moving back to Nebraska and attributed the move as the impetus for Taylence's own poor behavior.

We are also troubled by Susannah making an internal affairs complaint and child abuse and neglect complaint hours after she failed on her first complaint to modify and remove. Such allegations are serious and could have resulted in professional and personal consequences for Brandon. Additionally, Susannah filed a petition for a domestic abuse protection order against Brandon, but she did not appear for the hearing. Susannah did not present any evidence regarding a history of domestic violence during the modification trial. Based on the timing of these complaints and the petition, it appears that Susannah was attempting to weaponize the reporting process to punish Brandon for his having prevailed in the first modification order. In sum, it appears Susannah's motives were, in part, to frustrate Brandon's custodial rights.

On the other hand, Brandon's main motivation for opposing Taylence's move to North Carolina was so that he could continue to "fully participate in being a father." Brandon testified that when Taylence moved to North Carolina the first time, he was able to see her only on the occasional visit. Since the entry of the first modification order, Brandon has had joint physical custody of Taylence and parenting time for 5 out of every 14 days. Brandon testified that should Taylence be removed to North Carolina, he "won't be able to be the kind of father that I am now," and would miss out on attending Taylence's games, recitals, and celebrations, as well as the ability to be present for "bigger things" like medical emergencies. We find Brandon's reasons to show a proper motive for resisting the removal.

This factor weighs against removal.

### (ii) Enhanced Quality of Life

With respect to the second consideration, the quality of life for the children, there are nine components that may be involved in a trial court's consideration as to whether removal to another jurisdiction would enhance the quality of life of the child and custodial parent: (1) the emotional, physical, and developmental needs of the child; (2) the child's opinion or preference as to where to live; (3) the extent to which the custodial parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the child and each parent; (7) the strength of the child's ties to the present community and extended family there; (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parents; and (9) the living conditions and employment opportunities for the custodial parent, because the best interests of the child are interwoven with the well-being of the custodial parent. See *Korth v. Korth, supra*.

It is likely that moving to North Carolina would enhance the income of Susannah's household as Susannah testified that she would be able to utilize her North Carolina early childhood educator certification to find gainful employment. As discussed above, Susannah's husband is employed at a slightly higher wage in North Carolina than he was in Nebraska. Susannah briefly testified that "[w]hile living in Nebraska, I do have increased expenses that I would not have in North Carolina." However, there was no evidence adduced to compare the cost of living in North Carolina as opposed to in Nebraska.

The home that Taylence would live in in North Carolina appears adequate; the home that she resides in with Brandon in Nebraska is on a lake, which provides recreational opportunities.

Susannah believed that Taylence would benefit from the small group setting of her prospective charter school but presented no evidence regarding the school other than photographs of the building and the school's academic calendar. Susannah did not adduce any evidence to suggest that the school Taylence attended in Nebraska was not comparable.

Taylence is enrolled in extracurricular activities in Nebraska and would have activities available to her in North Carolina. She has her paternal grandparents and neighborhood friends in Nebraska and members of Susannah's extended family in North Carolina. She is seeing a behavioral therapist in Nebraska and Susannah has held Taylence's spot with a therapist in North Carolina. No evidence regarding Taylence's preference was offered at trial.

Based on our review of the record, we find that Taylence's quality of life would be generally the same in either North Carolina or Nebraska. However, we are also mindful that a move back to North Carolina would be the seventh time Taylence has changed residences in her young life.

This factor is neutral as to removal.

### (iii) Impact on Noncustodial Parent's Parenting Time

The third factor to be considered is the impact such removal will have on contact between the children and the noncustodial parent, when viewed in the light of reasonable parenting time arrangements. Susannah testified that enrolling Taylence in a year-round charter school would allow Taylence to visit Brandon five times a year and that she would pay for the airfare necessary to effectuate these visitations. The significant distance between Nebraska and North Carolina would make it impractical for Brandon to visit in person with Taylence on a regular basis.

Obviously, any move away from a parent is likely to hinder that parent's relationship with the child. See *Korth v. Korth*, 309 Neb. 115, 958 N.W.2d 683 (2021). A reduction in parenting time therefore does not necessarily preclude a custodial parent from relocating for a legitimate reason. *Id*. However, based on Susannah's retaliatory behavior, circumstantial evidence that she had been discussing the case with Taylence, and Susannah's statements that she believed a reduction in Brandon's parenting time would benefit Taylence, we are not confident that Susannah would do her best to facilitate contact between Brandon and Taylence after her removal. We find that a move to North Carolina would have a significantly negative impact on Brandon's ability to exercise parenting time with Taylence on a regular basis and be a part of her daily life.

This third factor weighs against removal.

Based on our de novo review of these three considerations discussed in *Farnsworth*, Susannah has not met her burden of showing that removal was in Taylence's best interests. Thus, although based upon different reasoning, we conclude that the district court did not abuse its discretion when it denied Susannah's request to remove Taylence from Nebraska. This assignment of error fails.

### 3. LEGAL AND PHYSICAL CUSTODY

Susannah also assigns that the district court erred in granting Brandon sole physical custody and final decisionmaking authority. However, in her brief on appeal, Susannah presents no specific argument regarding Brandon's award of physical custody and she discusses only the enhanced quality of life components under the second *Farnsworth* consideration. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Simons v. Simons*, 312 Neb. 136, 978 N.W.2d 121 (2022). For the sake of completeness, however, we note that Susannah acknowledged that physical custody would need to be placed in Brandon should the court deny her request to remove Taylence to North Carolina.

Susannah and Brandon have maintained joint legal custody of Taylence since the original decree was entered. Here, the district court modified legal custody only to the extent that Brandon was awarded final decisionmaking authority. In its order the district court found that while there had been some difficulties relating to the exercise of parenting time and the communication

between the parties, those issues did not rise to a level to justify a change in the existing joint legal custody.

However, after the district court denied Susannah's request to remove Taylence and awarded Brandon physical custody of Taylence, based on Susannah's testimony that she planned to move to North Carolina, the court granted Brandon "final say" in any disputes that may arise after the parties engage in discussions related to major decisions about Taylence's education, health, and general welfare. The order also noted that "an award of joint legal custody imposes upon [the parties] a duty to discuss issues relating to Taylence's welfare with the other parent as well as inform the other parent in a timely manner of what is going on with Taylence," prior to any final decisionmaking authority being exercised by Brandon.

Brandon testified that he has tried to co-parent productively with Susannah and to find a middle ground on issues concerning Taylence. We cannot say that the district court abused its discretion by awarding Brandon final decisionmaking authority, particularly given that he has physical custody of Taylence and will be the only parent residing with her in Nebraska. This assignment of error fails.

### 4. Passport Order

Susannah assigns that the district court erred in ordering Susannah to apply for a passport for Taylence. She argues that this order runs counter to the parenting plan provision incorporated in the decree, which prohibited taking Taylence on vacations to foreign destinations without the consent of the non-vacationing parent. However, in its second modification order, the district court struck the provisions of the parenting plan which required the non-vacationing parent to consent to Taylence going on foreign vacations with the other parent.

Brandon asked the district court to order that Taylence be permitted to have a passport and that Susannah be ordered to sign the necessary paperwork. Brandon testified that Susannah had declined to execute the paperwork necessary for Taylence to obtain a passport in order to join a vacation with Brandon and his fiancé's family.

Based on this evidence in the record, the district court was within its discretion to conclude that requiring the consent of the non-vacationing parent to take Taylence on foreign vacations was no longer appropriate and to modify the parenting plan accordingly. Thus, the order requiring that the parents cooperate in obtaining a passport for Taylence is not prohibited by the parenting plan, as that provision is no longer applicable. This assignment of error fails.

### 5. Award of Attorney Fees

Susannah assigns that the district court abused its discretion in awarding attorney fees to Brandon. The court received the attorney fee affidavit offered by Brandon, reflecting his attorney fees of $6,060 as of January 21, 2023. The court recognized that Susannah was a self-represented litigant but ordered her to pay $6,060 to Brandon as attorney fees.

Attorney fees and expenses may be recovered only where provided for by statute or when a recognized and accepted uniform course of procedure has been to allow recovery of attorney fees. *Garza v. Garza*, 288 Neb. 213, 846 N.W.2d 626 (2014). Customarily, attorney fees are awarded only to prevailing parties or assessed against those who file frivolous suits. *Id*. A uniform

course of procedure exists in Nebraska for the award of attorney fees in dissolution and modification cases. *Id*.

Susannah filed her complaint for a second modification and removal only 7 months after she failed on her claims in the first modification. In awarding attorney fees to Brandon, the district court found that there had been no material change in circumstances and so Susannah had not prevailed on her claims. We agree with the ultimate findings of the district court, though for different reasons, and thus, we conclude the court did not abuse its discretion in awarding Brandon attorney fees. This assignment of error fails.

## VI. CONCLUSION

For the reasons set forth above, we affirm the order of modification related to the child's legal and physical custody, acquisition of a passport, and allocation of fees. Though Susannah presented legitimate reasons to remove Taylence from Nebraska, we conclude that removal would not have been in the child's best interests. We also find that the district court did not abuse its discretion in declining to receive Susannah's various exhibits into evidence at trial.

AFFIRMED.