Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/28/2022 09:07 AM CST

Krystal M. Keiser, appellee,
v. Matthew G. Keiser,
appellant.

___ N.W.2d ___

Filed November 5, 2021.    No. S-20-926.

1. **Modification of Decree: Child Custody: Visitation: Child Support: Appeal and Error.** Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion.

2. **Evidence: Appeal and Error.** When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other.

3. **Modification of Decree: Child Custody: Proof.** The party seeking modification of a dissolution decree has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification.

4. **Taxation.** As a general rule, the income of a self-employed person can be determined from his or her income tax return.

5. **Child Support: Rules of the Supreme Court.** The Nebraska Child Support Guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure.

6. ____: ____. Under the Nebraska Child Support Guidelines, a deviation is permissible whenever application of the guidelines in an individual case would be unjust or inappropriate.

7. **Appeal and Error.** Generally, a party cannot complain of error which the party has invited the court to commit.

8. **Judgments: Appeal and Error.** Error without prejudice is not a ground for reversal.

Appeal from the District Court for Saunders County: Christina M. Marroquin, Judge. Affirmed.

Christopher A. Vacanti, of Vacanti Shattuck, for appellant.

John H. Sohl for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## INTRODUCTION

Matthew G. Keiser appeals from an order modifying the decree dissolving his marriage to Krystal M. Keiser. He challenges two aspects of the district court's child support calculation: the determination of his income and the methodology used. Because we find no abuse of discretion as to the income determination and because the court used the methodology proposed by Matthew, we affirm the order of modification.

## BACKGROUND

A December 2018 decree dissolved the parties' marriage. The court awarded the parties joint legal and physical custody of their four children: two daughters born in 2003 and 2005, respectively, and two sons, born in 2004 and 2007, respectively. The court ordered Matthew to pay child support of $2,000 per month for four children, which would decrease by $500 a month each time a child was no longer eligible to receive support. A child support calculation was not attached to the decree.

Within 8 months, both parties sought to modify the decree. They alleged a material change in circumstances with respect to custody and child support. Prior to trial, the parties resolved custody and parenting time issues. They agreed for Krystal to have sole custody of the parties' two daughters.

The district court conducted a trial concerning child support. It received into evidence the child support calculation used

to arrive at the $2,000 in child support initially agreed to by Matthew and Krystal. Matthew sought a reduction in his child support obligation due to an alleged decreased income; Krystal desired to receive more child support due to the change in physical custody of two of the children.

Evidence established that Matthew received the parties' landscaping business and construction company as part of the divorce property settlement agreement. He paid himself wages of $86,480 in 2017, $71,195 in 2018, and $19,182 in 2019. During those same years, the business' gross receipts were $1,438,125, $794,227, and $955,999, respectively. When asked why the business' gross receipts in 2018 were much lower than in 2017, Matthew responded: "[M]y best answer is I was broken. And we had downsized from '17 to '18. I had let go another sales lady. So, it was just me doing the sales, and my spark was gone so . . . ."

Matthew wished to have his child support obligation reduced. He testified that during 2019, he sold some of his land because he was "broke." But Matthew had taken vacations to Florida, Colorado, South Dakota, and Arkansas in the 2 years prior to trial. For Christmas, Matthew gave his sons expensive beds and 40-inch televisions. Additionally, one son received a shotgun and the other an electric piano. And Matthew was building a 1,800-square-foot "shouse"—a shed that is a house on the inside—in which to reside. Matthew testified that he obtained a $100,000 "SBA loan" in order to build it.

Matthew offered an exhibit demonstrating his suggestion of how child support should be calculated. He testified that his suggestion entailed calculating child support for the two daughters under worksheet 1 of the Nebraska Child Support Guidelines and for the two sons under the joint physical custody worksheet of the guidelines. Those two numbers were then added together to determine his total support obligation. He did not propose any deviation from that total. According to Matthew, this methodology "makes sense" for how the court should determine his child support obligation.

In November 2020, the court entered an order of modification. The court stated that tax returns and testimony did not support Matthew's claim that his business was not as profitable. It declined to average income, explaining that Matthew "has not established why income in this industry, or in his business specifically, has fluctuated." Thus, the court found that Matthew's monthly wage should remain at $16,207.58—the figure used for the initial determination—for purposes of calculating child support. The court found a material change in circumstances regarding custody, because Krystal had sole physical custody of two children and continued to share joint physical custody of the other two children.

In setting child support, the court adopted the proposed method as set out in Matthew's exhibit 76. The court explained: "There are two child support calculations. The first awards physical custody of [the daughters] to [Krystal]; and the second, awards joint physical custody of [the sons] to [Krystal] and [Matthew]." It determined Matthew's obligation for four minor children as follows:

| | |
|---|---|
| Obligation for daughters | $1,957 |
| Obligation for sons | $1,166 |
| Deviation downward | ($ 250) |
| Total obligation | $2,873 |

The court's order noted that the initial child support amount, which was stipulated to and subsequently ordered, contained a downward deviation of approximately $250 per month.

Matthew filed a timely appeal, which we moved to our docket.[1]

## ASSIGNMENTS OF ERROR

Matthew alleges that the district court erred (1) in determining that his evidence did not prove reduced income for child support purposes and (2) in calculating child support when the custody arrangement is a hybrid of sole physical and joint physical custody.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

## STANDARD OF REVIEW

[1] Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed by an appellate court de novo on the record, and will be affirmed absent an abuse of discretion.[2]

[2] When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other.[3]

## ANALYSIS

### Income

[3] Matthew first argues that the district court abused its discretion in determining that his evidence did not prove reduced income for child support purposes. The party seeking the modification has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification.[4] Matthew supported his claim with personal and business tax returns. He points out that his business' gross receipts decreased from $1,438,125 in 2017 to $955,999 in 2019 and that his personal income decreased from $194,491 in 2017 to $43,403 in 2019. Matthew proposed basing his child support obligation on his 2019 annual income of $43,403, which would equate to a monthly income of $3,617.

[4] The district court opted to use Matthew's monthly income as agreed to by the parties in May 2018. That amount—$16,207.58—was arrived at by annualizing Matthew's 2017 wages of $86,480 together with the profit from his business of $108,011, as reflected by tax returns. As a general rule, the income of a self-employed person can be determined from his or her income tax return.[5] Here, the court

---

[2] *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021).

[3] *Id.*

[4] *Incontro v. Jacobs*, 277 Neb. 275, 761 N.W.2d 551 (2009).

[5] *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006).

determined that Matthew failed to sufficiently explain a fluctuation in his earnings. In this regard, the district court's implicit assessment of credibility is important.

Matthew did not show that a material change in circumstances had occurred such that his child support obligation should be reduced. We have stated that the focus should be on whether the present circumstances are substantially and materially different than they were when the court established the initial child support obligation.[6] When asked about the business' reduced earning, Matthew explained that he "was broken," that he "let go another sales lady," and that his "spark was gone." Matthew has not shown that his income decreased through no fault of his own. Nor has he shown a change in his earning capacity. In determining the amount of child support a parent is obligated to pay, parental earning capacity is a considered factor.[7] We conclude the district court did not abuse its discretion in declining to decrease Matthew's income for child support purposes.

## Methodology

Matthew also challenges the district court's methodology in calculating child support when the custody arrangement is a hybrid of sole physical and joint physical custody. The Nebraska Child Support Guidelines provide that "[a]ll orders for child support, including modifications, must include a basic income and support calculation worksheet 1, and if used, worksheet 2 or 3."[8] There is not a worksheet specifically directed to every conceivable custody arrangement, such as the "hybrid" situation present here.

Recently, the Nebraska Court of Appeals encountered a similar situation.[9] There, the trial court adopted the father's

---

[6] See *Incontro v. Jacobs, supra* note 4.

[7] *Id.*

[8] Neb. Ct. R. § 4-203 (rev. 2020).

[9] See *Pearrow v. Pearrow*, 27 Neb. App. 209, 928 N.W.2d 430 (2019).

proposed child support calculation, which calculated child support for all four children under both a sole custody and a joint custody calculation and then averaged the amounts. The Court of Appeals found no abuse of discretion, recognizing that "there is no one application of the guidelines for the present situation from which the court could deviate."[10] Thus, the appellate court stated that "the child support ordered by the district court was not a deviation from the guidelines, but, rather, a flexible solution to the unique custody arrangement present here."[11]

We do not read the Court of Appeals' opinion as suggesting that no calculations are required where a court confronts a hybrid custody situation, and we disapprove of any such reading. Nor do we read the Court of Appeals' opinion as implying that averaging is always appropriate in such a situation. There, the trial court made a calculation and used a methodology employing averaging. In our view, the Court of Appeals simply found no abuse of discretion in the trial court's approach.

Courts differ on how the application of child support guidelines to particular custody arrangements should be classified. Some courts have determined that the guidelines do not apply; other courts have treated the situation as a deviation from the guidelines.[12] In our view, whether such a situation is viewed as an inability to strictly apply the guidelines or as a deviation is a largely theoretical distinction.

[5,6] This court has long recognized that the child support guidelines offer flexibility and guidance, with the understanding that not every child support scenario will fit neatly into the calculation structure.[13] As we said shortly after the guidelines were first adopted, "we do not suggest that an appropriate

---

[10] *Id.* at 214, 928 N.W.2d at 435.

[11] *Id.* at 214-15, 928 N.W.2d at 435.

[12] See Annot., 57 A.L.R.5th 389, § 20 (1998).

[13] See, *Brooks v. Brooks*, 261 Neb. 289, 622 N.W.2d 670 (2001); *Czaplewski v. Czaplewski*, 240 Neb. 629, 483 N.W.2d 751 (1992).

child support and expense order may be found to be accurate to the penny by applying the suggested guidelines."[14] Under the guidelines, a deviation is permissible whenever application of the guidelines in an individual case would be unjust or inappropriate.[15]

With that understanding, a trial court should endeavor to remain faithful to the goals and methodology of the child support guidelines and should set forth its calculations sufficiently to allow for meaningful appellate review. Through the worksheets, supplemented where necessary by related findings, "the trial courts must show the appellate courts, and the parties, that they have 'done the math.'"[16] Here, the district court did so.

Matthew presented a specific methodology to the district court. Therein, Matthew used separate calculations for two sets of children. One set of calculations was for the two children placed in Krystal's sole physical custody. The other was for the two children placed in joint custody. Under this methodology, Matthew's support obligations from the two calculations were then added together to determine his total support obligation. Although the district court rejected Matthew's income numbers, it followed his methodology. At oral argument, Matthew conceded that the court did so. After following Matthew's methodology, the court reduced the resulting calculation of Matthew's support obligation by employing a downward deviation. Had the court not done so, Matthew's methodology would have produced a support obligation of $3,123 for four children, $2,560 for three children, $2,236 for two children, and $842 for one child.

On appeal, Matthew presents a different approach. He now contends that the court should have used 50 percent of the

---

[14] *Brandt v. Brandt*, 227 Neb. 325, 327, 417 N.W.2d 339, 341 (1988), *over-ruled on other grounds, Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991).

[15] *Brooks v. Brooks, supra* note 13.

[16] *Stewart v. Stewart*, 9 Neb. App. 431, 434, 613 N.W.2d 486, 489 (2000).

support calculated using worksheet 1 for four children (because Krystal has sole physical custody of two children) and 50 percent of the support calculated using worksheet 3 for four children (because the parties have joint physical custody of the other two children). He then applies a $250 downward deviation. Matthew's appellate brief calculates that under his new method—using the district court's figures for income and deductions—his total obligation for all four children would be $1,818.50. We note that this proposed methodology would result in Matthew's paying less in child support now that Krystal has sole physical custody of two of the children than he was ordered to pay when the parties shared joint physical custody of all four children.

[7] Any error in the district court's methodology was invited by Matthew. The court explicitly "adopt[ed] the proposed method of calculation as set out in [Matthew's] Exhibit 76." Although the numbers used in the district court's calculation compared to those in Matthew's exhibit are different—primarily because the court used different net monthly incomes for the parties—the court followed Matthew's proposed method. Generally, a party cannot complain of error which the party has invited the court to commit.[17]

To avoid the invited error rule, Matthew orally argued that application of the guidelines presents a question of law upon which this court should reach an independent conclusion. We doubt that application of the guidelines is a pure question of law. But even if it is, this court has enforced the invited error rule in connection with a question of law.[18] While we have not applied the rule with respect to child support guidelines, the Court of Appeals has done so.[19] Because Matthew urged

---

[17] *Becher v. Becher*, 299 Neb. 206, 908 N.W.2d 12 (2018).

[18] See *id.*

[19] See, *McDonald v. McDonald*, 21 Neb. App. 535, 840 N.W.2d 573 (2013), *disapproved in part on other grounds, Fichtl v. Fichtl*, 28 Neb. App. 380, 944 N.W.2d 516 (2020); *Willcock v. Willcock*, 12 Neb. App. 422, 675 N.W.2d 721 (2004).

the court to use his methodology and the use of that methodology does not detrimentally affect the children, he cannot now argue the court erred by using it.

[8] Although the district court's downward deviation went beyond the calculations resulting from Matthew's methodology, it did so in his favor. Error without prejudice is not a ground for reversal.[20] Had the court not done so, the support obligation resulting from Matthew's methodology would have been substantially higher.

We do not suggest that courts should emulate the method that Matthew presented to the district court. We simply recognize that because he urged this methodology below, the invited error rule precludes him from challenging it on appeal.

Courts should bear in mind that "[t]he main principle behind [the child support] guidelines is to recognize the equal duty of both parents to contribute to the support of their children in proportion to their respective net incomes."[21] In a hybrid custody situation, the trial court's central task may be to allocate the parties' income share attributable to their children under table 1 of the guidelines between the parties and, if appropriate and permissible, to deviate from the guidelines.[22] We cannot prescribe a single method to fit every hybrid custody situation or, perhaps, most situations. But we urge courts and litigants not to lose sight of the ultimate goal of the guidelines' main principle.

## CONCLUSION

Because we find no abuse of discretion by the court in its determination of Matthew's income for child support purposes and because Matthew invited any error in its methodology to calculate child support, we affirm the order of modification.

Affirmed.

---

[20] *In re Estate of Marsh*, 307 Neb. 893, 951 N.W.2d 486 (2020).

[21] Neb. Ct. R. § 4-201.

[22] See § 4-203.