IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MAI V. MAI

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEREK MAI, APPELLEE,

V.

REBEL MAI, APPELLANT.

Filed June 11, 2024.    No. A-23-777.

Appeal from the District Court for Kearney County: TERRI S. HARDER, Judge. Affirmed.

Mitchell C. Stehlik, of Stehlik Law Firm, P.C., L.L.O., for appellant.

Jeffrey P. Ensz, of Lieske, Lieske, & Ensz, P.C., L.L.O., for appellee.

MOORE, ARTERBURN, and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

Rebel Mai appeals from the order of the district court for Kearney County, which modified the decree dissolving her marriage to Derek Mai. Rebel asserts that the court erred in failing to award her primary physical custody of the parties' child. Finding no abuse of discretion, we affirm.

STATEMENT OF FACTS

*Procedural Background.*

Derek and Rebel were married and together share one child, Killian, born in May 2019. The district court entered a divorce decree on June 17, 2021, pursuant to the parties' settlement agreement. The parties were awarded joint legal and physical custody with a week on, week off parenting time arrangement.

On January 10, 2023, Rebel filed a complaint to modify, alleging that a material change in circumstances had occurred, as the parties lived in different communities, making it impossible to

maintain the current week on, week off parenting time arrangement when Killian attends school. Rebel also alleged that Killian had been unable to attend preschool due to the current alternating parenting time arrangement; that the majority of Killian's care during Derek's parenting time was provided by Derek's mother or daycare due to Derek's work schedule; that Derek continued to smoke around Killian despite the child's sensitivity to cigarette smoke; that Derek failed to follow the terms of the current parenting plan; that Derek failed to provide Rebel with information regarding Killian; and that Derek had anger issues that affect Killian. Rebel also alleged that it was in Killian's best interests for Rebel to be awarded primary physical custody.

Derek filed an answer and cross-complaint for modification. Derek alleged as material changes in circumstances that the parties lived in different communities, making joint physical custody impractical when Killian is old enough to attend school; that Rebel had failed to maintain stable housing and employment; and that Rebel had exhibited signs of drug use when Killian was in her care. Derek also alleged that it was in Killian's best interests for Derek to be awarded primary legal and physical custody.

*Trial.*

Trial on the matter was held on August 23, 2023. At trial, the parties clarified that they were not seeking a change in the joint legal custody award, rather, only the joint physical custody award. Rebel, Derek, the director of Killian's daycare, and other family members testified, and the following evidence was adduced.

Rebel was living in Holdrege, Nebraska, and Derek in Minden, Nebraska, at the time the divorce decree was finalized. Rebel testified that at the time, she was working in Holdrege for sales commission as a service manager at a car dealership. She decided to get an apartment in Holdrege rather than spend the time driving to and from Minden, which is approximately 23 miles away. Rebel later left her job at the car dealership because a friend approached her about becoming an insurance agent, which seemed more stable than her commission-based job. However, Rebel failed the licensing exam twice.

After Rebel was unable to pass the licensing exam to become an insurance agent, she decided to move to Grand Island, Nebraska, to be closer to her family. Rebel's sister informed her that a friend had a house available for rent in Palmer, Nebraska, roughly 24 miles away from Grand Island. Rebel moved to Grand Island for a few months while she waited for her landlord to prepare the house in Palmer. During that time, Rebel worked for an "up-and-coming country band," selling band merchandise and helping with setting up and tearing down equipment for performances. Rebel would also occasionally work as a bartender, help her father clean his rental properties, and she started charging for photography sessions. When Rebel worked weekends, she would provide Derek with the right of first refusal regarding parenting time with Killian, which she testified that he would take but not reciprocate.

Rebel moved from her house in Palmer to Grand Island in November 2022, as her landlord wanted to sell the rental house. At the time of trial, Rebel lived in a three-bedroom house with her boyfriend of 1 year. Photographs of her home were received into evidence. Killian has his own room in Rebel's home. Rebel's sister, brother, and father live within 20 minutes of Grand Island. Rebel testified that she planned to live in Grand Island indefinitely. Last year, Rebel attempted to "preemptively" sign Killian up for daycare in Palmer, but "[t]here was no resolution so I couldn't

move forward." Rebel has used both her boyfriend and father to provide childcare when Killian is in her custody.

Rebel had been working remotely for a company selling credit card processing machines since June 2023. Rebel was in training for part of June, and during her first full month of working in July, she earned roughly $700. She continues to operate a side photography business and occasionally works at a bar and helps her father with the cleaning of his rental properties. She described photography as more of a hobby, noting that she shoots only a couple of sessions a month. Rebel acknowledged at one time having an OnlyFans account, which she used to sell nude images of herself, but denied presently using the account to make money.

Derek testified that he continues to live in the Minden rental house where the parties resided during their marriage. Derek's landlord testified that Derek has generally been a good tenant but has at times been late on his rent.

Derek has worked for Baldwin Filters in Kearney, Nebraska, as a freight loader since 2014. In 2019 Derek was discharged for a period of 6 months for saying that he would "beat somebody up outside of work," though Derek denied ever threatening a coworker. Derek offered three weekly paystubs from early 2023, demonstrating a weekly net pay of approximately $600. Derek's employee health insurance provides coverage for Killian. Derek typically works from 7 a.m. to 3 p.m., Monday through Friday, and the last Saturday of the month for overtime. During his parenting time, Derek drops Killian off at his Minden daycare at 6:30 a.m. Killian's daycare also provides preschool curriculum and at the time of trial, Killian had been attending the same daycare for the past 3 years. Derek's mother also provides childcare for Killian.

Rebel testified that during the parties' marriage, she noticed Killian was "a little behind" and enrolled Killian in behavioral and speech therapy through the Early Development Network. Derek testified that Killian's daycare director mentioned to him that Killian's speech was delayed and that was how the family became connected with the Early Development Network. The daycare director testified consistently with Derek. Killian began with monthly home visits for the first year and a half of his treatment but has progressed to going to Minden Public School to interact with a team of specialists and other students. The therapy has increased Killian's ability to express his emotions and needs. Rebel testified that she and Killian's therapist initially agreed that Killian's therapy session should be held in Minden, but that Killian could receive services in either Minden or Grand Island. Killian has not been diagnosed with a specific disability or developmental delay.

Killian also suffers from chronic ear infections and congestion. Rebel took Killian to the doctor in March 2022, and he was diagnosed with an allergy to cigarette smoke. Rebel ceased smoking immediately and provided Derek with the doctor's note and instruction to stop smoking around Killian, but Derek has not quit smoking. Both Rebel and Rebel's father testified that Killian is often sick after returning from Derek's parenting time. Rebel acknowledged that she continues to "vape" and sometimes smokes marijuana, though never around Killian. Rebel also expressed frustration that Derek does not keep her updated regarding Killian's health appointments whereas she makes the effort to notify Derek when Killian is sick and of resulting appointments.

Derek testified that he took Killian to an allergy specialist sometime in 2022. The specialist found that Killian was not allergic to cigarette smoke, but that it was an irritant for him. Derek did not inform Rebel about the appointment but did provide her with an information sheet from the specialist following the appointment. Derek acknowledged that Rebel had suggested he stop

smoking around Killian. Derek continues to smoke cigarettes, including in the car in which he drives Killian, but denied smoking in the house or in Killian's presence. He testified that he believed he was acting appropriately to prevent an exacerbation of Killian's allergies. Derek disagreed that Killian is constantly sick in his care and attributed Killian's occasional sickness to allergies and going to daycare. Killian's daycare director also testified that she has not observed Killian to be sicker than the average child.

Rebel described her communication with Derek as "awful," and discussed Derek signing Killian up for swimming lessons without her knowledge as an example. Rebel testified that when she found out that Killian had been enrolled in swimming lessons during Derek's parenting time, she asked Derek where the lessons would be held, and he refused to disclose the location of the lessons until the following day. Rebel described calling every pool within driving distance of Minden because Derek would not tell her where Killian was at that time.

Derek acknowledged that he did not tell Rebel when he signed Killian up for swimming lessons. He testified that he refused to tell Rebel where the swimming lessons were because Rebel had previously withheld information from him, including where she was working and the contact information of her boyfriend. Derek also noted that in the past when he had discussed enrolling Killian in swimming lessons with Rebel, she had not responded to his text messages on the subject. Only after the modification complaint had been filed in this case had Rebel become upset over Killian's swimming lessons.

Rebel was also frustrated that she was not granted access to a daycare app for Killian's daycare in Minden. The app reflects what Killian is doing throughout the day, such as whether he is eating his meals or using the bathroom. Rebel described asking Derek for access to the app for months before calling the daycare herself. One of the times she asked Derek for access to the app by texting him, he responded that he was withholding the access because Rebel owed him money. When Rebel sent the daycare a copy of the parties' settlement agreement, which noted that she and Derek had joint legal and physical custody, she was granted access to the app.

Derek testified that when he signed Killian up for daycare, he gave notice that Rebel was the mother and believed that he had provided Rebel's contact information. Killian had been at the daycare for a month when Derek mentioned the app to Rebel, and she wanted access to it. Derek stated that he wanted to "hold off getting [Rebel] access to it because I knew as soon as I gave her access to that it was going to start issues." Derek testified that he had to give the daycare providers permission to give Rebel access to the app. Once Rebel was added to the app, she began to have arguments with Derek about what he was doing with Killian during his parenting time. For example, Rebel would contact Derek to ask why Killian was signed out of daycare early or absent on a particular day. Derek did not believe that Rebel was entitled to that information because she was no longer his wife and "I'm not going to tell you I'm going to take this day off."

The daycare director testified that Derek did not have to give permission for Rebel to have access to the app, rather the decision "all goes through me." The director testified that Rebel felt like she was missing information or was not receiving all the information. Once the director explained how the app functioned, the issues with Rebel were resolved. The director noted that she may have requested to see the parties' parenting plan before granting Rebel access to the app due to privacy concerns and in an effort to protect herself and the daycare center. The director also

stated that it was clear that both parties care for Killian and that none of the staff at the daycare center had concerns regarding either parent.

Both parties described having fun with Killian. Derek and Killian enjoy playing with Legos and cars, doing arts and crafts, and going fishing or to the park. Killian also has neighborhood friends in Minden whom he often plays with. Rebel and Killian like to collect and polish rocks, read books together, and go on outings to the zoo or fair.

Rebel raised concerns regarding Derek's lack of discipline with Killian. Rebel testified that during Derek's parenting time, Killian had no structure or boundaries, and that Derek has long been focused on being Killian's friend, rather than his parent.

Rebel's father testified that he sees Killian at least one weekend a month. He lives in Loup City, Nebraska, roughly 47 miles from Grand Island. Rebel's father has observed a bond between Killian and Rebel and that Rebel meets all of Killian's physical and emotional needs. He has also observed Killian's interactions with Rebel's boyfriend and has no concerns. Rebel's father has never seen Rebel smoking or drinking while caring for Killian. Rebel's father has experienced Derek becoming angry during the parties' marriage and some incidents of domestic violence. He believed it was in Killian's best interests to live with Rebel.

Derek completed substance abuse treatment for alcohol roughly a decade ago and it was suggested that Derek cease drinking entirely. Derek denied having any present issues with alcohol and continues to drink on occasion.

Derek's sister testified that she lives in Norton, Kansas, roughly 86 miles from Minden, and sees Derek and Killian about three times a month. She also has three children, Killian's cousins, who play with Killian during family time together. Derek's sister has observed Derek to be a loving father to Killian and denied that Derek smokes cigarettes around Killian or that Derek is quick to anger. She conceded that Derek had been in a physical altercation with her husband but testified that "it wasn't Derek having an altercation with him. He was trying to control my husband for behaving the way that he was at the bar." Derek's sister could not recall when this altercation occurred but testified that Killian was not present.

Derek's mother testified that she lives in Franklin, Nebraska, roughly 28 miles away from Minden, and that she sees Killian at least once a week and provides childcare for Killian when Derek has to work on a Saturday. She described Derek as an attentive and interactive father. She testified that Derek goes outside to smoke cigarettes and does not smoke in front of Killian. She was also unconcerned about Derek's drinking and described his alcohol consumption as responsible.

Rebel testified that it was impossible for she and Derek to continue the week on, week off custody arrangement once Killian was enrolled in school, as Rebel had called all of the nearby schools and none were willing to accommodate that schedule. Because of the distance between Minden and Grand Island, nearly 55 miles, it was not practical for Killian to attend the same school. To address the issue, Rebel and Derek participated in one mediation session but Rebel testified that Derek did not return for the second session, though he had requested it.

Derek believes that he and Rebel can have a relationship where they freely exchange information regarding Killian. Derek acknowledged that there have been communication issues between them and that he has contributed to the issues himself. Derek also believes that it is in Killian's best interests that he be awarded primary physical custody. Derek testified that he would

be able to provide more stability for Killian given that Derek has been with the same employer for many years and has kept Killian in the same daycare, where Killian has several friends, for the last 3 years. Though Derek had briefly considered moving to Kearney, he planned on living in Minden indefinitely and was looking to purchase a home in town. Derek wanted Killian to be able to continue the relationship he has with his friends and not have to "be jumping back and forth, back and forth."

*Modification Order.*

On September 5, 2023, the district court entered a modification order awarding Derek primary physical custody of Killian. The court found that the present week on, week off custody arrangement would be unworkable once Killian began school. The court acknowledged that the parties were living in different communities at the time the decree was entered and thus there may not technically be a material change in circumstances, "[n]onetheless, something needs to be done. The current arrangement will certainly become impractical when Killian reaches school age in May of 2024." The court went on to find that that neither party was unfit and that the "decision is actually a close call for the Court." In awarding primary physical custody to Derek, the court noted that Derek had greater stability with respect to his residence and employment, and he had Killian enrolled in a preschool in Minden.

Rebel appeals.

ASSIGNMENT OF ERROR

Rebel assigns that the district court erred in failing to award her primary physical custody.

STANDARD OF REVIEW

Modification of a judgment or decree relating to child custody, visitation, or support is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and will be affirmed absent an abuse of discretion. *State on behalf of Daphnie F. v. Christina C.*, 310 Neb. 638, 967 N.W.2d 690 (2021). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

When evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than the other. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021).

ANALYSIS

Ordinarily, custody and parenting time of a minor child will not be modified unless there has been a material change in circumstances showing that the best interests of the child require modification. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). Modifying a custody or parenting time order requires two steps of proof. *Id*. First, the party seeking modification must show by a preponderance of the evidence a material change in circumstances that has occurred after the entry of the previous custody order and that affects the best interests of the child. *Id*. Second, the party seeking modification must prove that changing the child's custody or parenting time is in the child's best interests. *Id*.

*Material Change in Circumstances.*

Rebel does not challenge the district court's finding that a material change in circumstances existed. However, for the sake of completeness we briefly address the issue.

Generally speaking, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Id*. Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Id*.

Rebel and Derek did not reside in the same community at the time of their divorce, as Rebel was living in Holdrege and Derek in Minden. Though they continue to live in different communities, since the decree was entered Rebel has moved to Grand Island, thus increasing her distance to Minden from 23 to 55 miles. This increased distance, coupled with the fact that Killian was soon to reach school age, was sufficient to establish a material change of circumstances warranting a modification of the custody and parenting time. The district court did not err in so finding.

*Best Interests.*

Rebel argues that the district court abused its discretion in finding that it was in Killian's best interests to modify the decree to award Derek physical custody.

Under the Parenting Act, the requirements for a child's best interests include "[a] parenting arrangement and parenting plan or other court-ordered arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress for school-age children." Neb. Rev. Stat. § 43-2923(1) (Reissue 2016). Additionally, § 43-2923(6) sets forth a non-exhaustive list of factors to be considered in determining the best interests of a child in regard to custody, including:

(a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;

(b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;

(c) The general health, welfare, and social behavior of the minor child;

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903; and

(e) Credible evidence of child abuse or neglect or domestic intimate partner abuse. For purposes of this subdivision, the definitions in section 43-2922 shall be used.

In addition to the "best interests" factors listed in § 43-2923, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and

stability of each parent's character; and the parental capacity to provide physical care and satisfy the educational needs of the child. *Rodas v. Franco*, 30 Neb. App. 910, 974 N.W.2d 856 (2022).

In its modification order, the district court found that Derek had exhibited greater stability with respect to his residence and employment. Derek testified that he has continued to live in the rental home where the parties resided during the marriage. Killian has friends in his Minden neighborhood and has attended daycare and preschool there. Derek plans to live in Minden indefinitely and is planning on purchasing a home in that community. Derek has worked for the same employer since 2014 except for a period of 6 months in 2019 where he was discharged for misconduct. His employment resumed after that 6-month period. Derek's offered paystubs reflect a steady source of income.

Rebel argues that Derek's discharge indicates a lack of self-control and stability. It appears that Derek was discharged due to a comment he made to another coworker. However, his employment has been continuous without incident since then and this incident occurred prior to Killian's birth. Though Rebel's father briefly raised allegations of domestic violence between Rebel and Derek, no specific evidence was offered to support the claim that Derek has anger management issues. Derek's sister noted that Derek got into an altercation with her husband, but that Derek was attempting to restrain the husband.

In contrast to Derek's history, Rebel has lived in three different communities since the entry of the decree and has held a variety of jobs. At the time of trial, she had been working remotely for a commission-based job for 2 months.

The district court also noted in its order that Derek had enrolled Killian in a preschool program in Minden. Derek testified that Killian had been attending the same daycare in Minden for the past 3 years and that the daycare also offered preschool curriculum, in which Killian was now old enough to participate. Killian has also made friends at his daycare.

Rebel argues that there was evidence that she sought to enroll Killian in preschool programs in both Palmer and Grand Island. However, there was little in the record to establish why Rebel was unable to enroll Killian in preschool during her parenting time as Derek had.

Rebel also contends that Derek attempts to marginalize her from Killian's life by refusing to share information with her. Derek acknowledged in his testimony that he has contributed to the communication issues between the parties. However, we also note that Rebel was seeking information regarding Killian while he was at daycare and at swimming lessons during Derek's parenting time. There was testimony that Derek provided Rebel with the information regarding swimming lessons the following day and that, per the daycare's procedures, the director granted Rebel access to the daycare app once she was provided with the parties' parenting plan. The parties continue to share joint legal custody of the child and the communication issues are not so severe to suggest that Derek is unfit to have physical custody.

Finally, Rebel asserts that she places Killian's best interests above her own and has done this by stopping smoking in his presence, by setting a routine, and by taking a job which allows her to work from home. Testimony at trial demonstrated that Rebel continues to vape and smoke marijuana on occasion and Derek continues to smoke cigarettes, but that neither smoke in Killian's presence. Though Derek works outside of the home, Killian's routine during Derek's parenting time includes attending preschool, spending time playing with Derek, and occasionally being cared for by Derek's mother.

The evidence at trial showed that both Rebel and Derek share a bond with Killian, that they have provided Killian with appropriate care, and that they both have the support of their extended families. The district court explicitly found that this case was a "close call." The evidence was in conflict, and we consider and give weight to the fact that the district court heard and observed the witnesses and accepted one version of the facts rather than the other. See *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021). Upon our de novo review, we find no abuse of discretion in the court's determination that it was in the Killian's best interests to modify the decree to award primary physical custody to Derek.

CONCLUSION

The district court did not abuse its discretion in modifying the decree to award Derek primary physical custody of the parties' child. Accordingly, we affirm.

AFFIRMED.