Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:09 PM CDT

TYLER J. JANDA, APPELLEE, V.
STEPHANIE R. JANDA, NOW KNOWN AS
STEPHANIE R. DANLEY, APPELLANT.

___ N.W.3d ___

Filed June 4, 2024.    No. A-23-549.

1. **Child Custody: Appeal and Error.** Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion.

2. **Modification of Decree: Child Custody: Proof.** Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action.

3. ____: ____: ____. The showing required to modify custody is a two-step process: First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. Next, the party seeking modification must prove that changing the child's custody is in the child's best interests.

4. ____: ____: ____. Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances.

5. **Modification of Decree: Words and Phrases.** Generally, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently.

6. **Modification of Decree: Evidence: Appeal and Error.** Where the party seeking modification advances multiple reasons for modification, an appellate court does not consider whether each individual factor standing alone constitutes a material change; the appellate court instead

considers all the facts and circumstances raised by the evidence to determine whether there has been a material change.

7. **Modification of Decree: Child Custody: Proof.** The party seeking modification of a dissolution decree has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification.

8. **Modification of Decree: Child Custody.** Removal of a child from the state, without more, does not amount to a change of circumstances warranting a change of custody. Nevertheless, such a move when considered in conjunction with other evidence may result in a change of circumstances that would warrant a modification of the decree.

9. **Child Custody.** In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child.

10. ____. When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

11. ____. Other relevant considerations include stability in the child's routine; minimalization of contact and conflict between the parents; the general nature and health of the individual child; the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child.

12. ____. No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made.

13. **Modification of Decree: Child Custody.** While the district court is not necessarily obligated to provide a detailed analysis in a modification of custody case, it is the best practice for a district court to provide some detailed analysis in determining what is in the best interests of the children.

14. **Evidence: Appeal and Error.** When a finding is not expressly made by a trial court, an appellate court, in its de novo review, may make such a finding if the evidence supports it.

15. **Evidence: Witnesses: Appeal and Error.** When the district court does not provide an analysis, an appellate court can make little application of its general rule that in its de novo review, an appellate court considers, and may give weight to, the fact that the trial court saw and heard the witnesses.

16. **Child Custody.** The decisions of where a child will reside and attend school are fundamental decisions that require mutual agreement between parents who maintain joint legal custody.

17. **Child Custody: Intent.** A parent's intentional refusal to promote and facilitate the other parent's involvement in a child's important educational, religious, and medical needs constitutes a significant factor to consider when making custody decisions.

18. **Child Custody.** Although not a completely determinative factor, the promotion and facilitation of a relationship by one parent with the other parent is a factor that may be considered when awarding custody.

Appeal from the District Court for Lancaster County: Lori A. Maret, Judge. Affirmed.

Eddy M. Rodell for appellant.

Sean M. Reagan, of Reagan Law Offices, P.C., L.L.O., for appellee.

Pirtle, Chief Judge, and Riedmann and Welch, Judges.

Pirtle, Chief Judge.

## INTRODUCTION

Tyler J. Janda and Stephanie R. Janda, now known as Stephanie R. Danley, are a divorced couple with four shared children. Their initial parenting plan gave Stephanie primary custody of the children, subject to Tyler's reasonable parenting time. However, after Stephanie sought a modification of the parenting plan due to their constant disagreements, Tyler requested that he be given primary custody of the children. After a trial, the district court for Lancaster County modified their custody arrangement and gave Tyler physical and legal

custody of the children, subject to Stephanie's reasonable parenting time. Stephanie now appeals that decision. For the reasons that follow, we affirm the decision of the district court.

## BACKGROUND

Tyler and Stephanie were married on January 1, 2013. During their marriage, they had four children: B.J., S.J., R.J., and H.J. At the time of trial, B.J. was 10 years old, S.J. was 7 years old, and R.J. and H.J. were both 5 years old. On January 22, 2021, as part of their divorce proceedings, Tyler and Stephanie entered into a settlement agreement that included as an attachment the parties' parenting plan concerning the visitation and custody of their children. Pursuant to their parenting plan, Tyler and Stephanie maintained joint legal custody of the four children and Stephanie was granted primary physical custody.

On March 1, 2021, Tyler and Stephanie's divorce was finalized, and the parties maintained the same custody arrangement. At that time, both parties lived in Lincoln, Nebraska. Pursuant to the arrangement, the parties had a "nine-five" schedule where Stephanie had the children for 9 days and then Tyler had them for 5 days. The plan provided that Tyler was responsible for picking up the children from their school or Stephanie's home when his parenting time started and dropping them off when it concluded. The parenting plan required Stephanie to provide medical insurance for the children and mandated that both parties inform one another when they planned to change the residence of the children for more than 30 days.

On October 8, 2021, Stephanie filed a complaint for modification that alleged she and Tyler were having problems communicating with one another. Due to this, she sought an order that directed the parties to communicate solely via an application for parents (parenting app). Additionally, Stephanie sought to merge the divorce action with a separate case dealing with Tyler's payment of child support and requested the court reevaluate the amount of child support he owed.

On November 3, 2021, in response to Stephanie's complaint for modification, Tyler filed an answer and counter-complaint wherein he sought sole physical and legal custody of the children. During the pendency of the proceedings, the district court entered several temporary orders. These orders included an April 22, 2022, order regarding child support; a January 6, 2023, order appointing a guardian ad litem (GAL) for the four children; and a March 10 order concerning the children's schooling.

On December 15, 2022, while the modification proceeding was pending, Stephanie moved from Lincoln to Fairbury, Nebraska. Due to the move, the two school-aged children switched schools and started attending school in Fairbury. Tyler took issue with the move, alleging that it impacted his visitation schedule because it added an approximate hour-long commute both ways for him to pick up and drop off the children.

## Trial

On March 23, 2023, a trial was held on the parties' competing complaints for modification. Several witnesses testified during the trial, including Tyler and Stephanie.

Stephanie testified that she moved to Fairbury because her landlord increased her rent and she and the children needed more room. She stated that she put in an offer on a house in Fairbury in October 2022, it was accepted on November 1, and she closed on the home on December 15. However, it was only after she closed on the home that she informed Tyler she was moving to Fairbury.

Although Stephanie looked at several houses in the Lincoln area, she stated that she purchased the home in Fairbury because of its size and number of bedrooms and because the purchase price was on the lower end of her budget. Stephanie testified that when she purchased the house in December 2022, she did not believe it would impact Tyler's parenting time because she was still planning to work in Lincoln. However,

contrary to that claim, she stated that she had started applying for remote positions as early as October. Then on December 20, citing the prohibitive cost of daycare, she quit her job in Lincoln and soon began a new job that allowed her to work from home. She explained that this new job's flexible schedule would allow her to watch her two youngest children throughout the day while she worked. After taking this job, she enrolled the two school-aged children in Fairbury schools in early January 2023. However, there was no indication she discussed this change with Tyler before doing so.

Stephanie also discussed the ongoing issue of her and Tyler not being able to communicate without arguing. She described that they had been unable to compromise on transportation, how to make up for lost parenting time, and how to accommodate Tyler's work schedule. She explained that although they were temporarily ordered to use a parenting app for communication, Tyler never set up his account. As such, they were communicating primarily through text messages. She described these communications as "combative" and believed that using a parenting app that logged their communications would help her and Tyler act more appropriately. Stephanie also testified to her belief that Tyler's wife was the one responding to many of her text messages.

Tyler testified that as a result of Stephanie's move to Fairbury, he was unable to parent the children on a "nine-five" basis because his work hours made it difficult for him to pick up and drop off the children in Fairbury. He stated that due to the move, he consistently missed out on 2 of his allotted 5 days of custody. Additionally, he claimed his inability to engage in full visitation had negatively affected the children and his relationship with them.

Tyler also mentioned that he had concerns about domestic violence in Stephanie's home. He stated that Stephanie had previously posted on social media about her boyfriend "putting his hands on her." He also stated that this boyfriend still stayed at Stephanie's home "from time to time."

Additionally, Tyler testified about his concerns regarding the creation by Stephanie of an "OnlyFans" account where she posted explicit sexual content. Stephanie started an OnlyFans account sometime around the end of 2021 but claimed to have only posted from the account between August and September 2022. During that period, she posted approximately five nude pictures of herself and one video of her masturbating. Notably, in an affidavit Stephanie submitted to the district court in 2022, she denied the existence of this account. Specifically, in response to Tyler claiming she had the OnlyFans account, she stated, "This is not true," and "I don't know why [Tyler] would make this claim."

The ex-husband of Tyler's wife also testified at trial. The ex-husband and Tyler's wife share a daughter. The ex-husband discussed his recent request to modify the daughter's custody due to her claims that Tyler physically abused her. While the ex-husband was unable to go into detail about the accusations, he stated they were serious enough for him to request the custody modification. However, he explained that he never reported these allegations to law enforcement, Child Protective Services, or any other authority.

A woman who interacts with Tyler regularly also testified at trial. She stated that she is married to Tyler's cousin and that she had known Tyler for around 4 years, attending approximately 50 events where he was present. Her testimony was short, but she testified that Tyler was "an incredible father" and provided anecdotes about Tyler's positive interactions with his children.

The GAL's report was also entered into evidence. In her report, the GAL stated it was clear the parties were having trouble communicating and the children were affected by the move to Fairbury. As a result of the move, the GAL reported the children saw Tyler less and were sad about the lack of time they were spending with him. She stated that when she discussed this issue with Stephanie, it was clear that Stephanie questioned the benefit of Tyler's having a

relationship with the children. Stephanie's concerns seemed to stem from Tyler's previous abandonment of the children and her belief that he would abandon them again. The GAL concluded that it was in the children's best interests to have more equal time with their parents and advised the court to fashion a plan that maximized time with each parent.

## District Court's Order

On June 30, 2023, the district court issued an order that modified the custody arrangement by granting Tyler the physical and legal custody of the children, subject to Stephanie's reasonable parenting time. In its order, the court stated:

[T]he Court finds that a material change in circumstances exists in that the custody of the minor children should be modified. The Court notes that [Stephanie] has made a unilateral decision to move the children to a location which seriously affected [Tyler's] parenting time with the children, and this change has proven to not be in the best interests of the children.

Additionally, the district court ordered all communications regarding the minor children to be between Tyler and Stephanie only and via the "Talking Parents" parenting app. Further, the court ordered Stephanie to pay $753 per month in child support that would be lowered once each child reached the age of majority.

Stephanie now appeals the district court's order.

## ASSIGNMENT OF ERROR

Stephanie assigns, restated, the district court erred in granting Tyler physical and legal custody of the children.

## STANDARD OF REVIEW

[1] Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Burton v. Schlegel*, 29 Neb. App. 393, 954 N.W.2d 645 (2021).

## ANALYSIS

[2,3] Stephanie asserts the district court erred in finding that there was a material change in circumstances and, therefore, erred in modifying the custody arrangement. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing either that the custodial parent is unfit or that the best interests of the child require such action. *Scott v. Dorrance*, 32 Neb. App. 213, 995 N.W.2d 226 (2023). The Nebraska Supreme Court has described this showing as a two-step process: First, the party seeking modification must show a material change in circumstances, occurring after the entry of the previous custody order and affecting the best interests of the child. *Id.* Next, the party seeking modification must prove that changing the child's custody is in the child's best interests. *Id.*

Here, neither parent claimed the other was unfit. Consequently, we focus our review on whether Tyler demonstrated a material change in circumstances that affected the children's best interests and whether Tyler proved that being granted physical and legal custody was in their best interests.

### Material Change in Circumstances

[4-7] Proof of a material change in circumstances is the threshold inquiry in a proceeding on a complaint to modify, because issues determined in the prior custody order are deemed preclusive in the absence of proof of new facts and circumstances. *Lindblad v. Lindblad*, 309 Neb. 776, 962 N.W.2d 545 (2021). Generally, a material change in circumstances is the occurrence of something which, had it been known to the dissolution court at the time of the initial decree or prior modification, would have persuaded the court to decree differently. *Id.* Where the party seeking modification advances multiple reasons for modification, we do not consider whether each individual factor standing alone constitutes a material change; we instead consider all the facts and circumstances raised by the evidence to determine whether there has

been a material change. *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). The party seeking modification of a dissolution decree has the burden to produce sufficient proof that a material change of circumstances has occurred that warrants a modification. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021).

In its order, the district court found a material change in circumstances warranting a modification. While the district court did not provide any analysis as to this change, it noted that Stephanie had made a unilateral decision to move the children to a location that "seriously affected" Tyler's parenting time.

[8,9] Stephanie essentially argues the district court erroneously found that her move to Fairbury constituted a material change in circumstances. She cites *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002), where the Supreme Court considered a case in which a father sought a modification of custody. In that case, the father's argument alleged solely that the mother's anticipated move to Virginia was a change in circumstances sufficient to warrant a modification. The court, in affirming the denial of the father's modification request, stated:

> [R]emoval of a child from the state, without more, does not amount to a change of circumstances warranting a change of custody. . . . Nevertheless, such a move when considered in conjunction with other evidence may result in a change of circumstances that would warrant a modification of the decree. . . . In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child.

*Id.* at 1041, 637 N.W.2d at 621. Citing to this passage, Stephanie argues that because the district court's order mentioned only her move to Fairbury as justification for finding a material change in circumstances, it erred as a matter of law.

Tyler acknowledges that although Stephanie's move to Fairbury, standing alone, may not constitute a material change in circumstances, evidence presented at trial demonstrated that Stephanie engaged in other behaviors that warranted the finding. He asserts that Stephanie moved before providing the requisite notice to him, removed the two school-aged children from their Lincoln school without notifying him, created OnlyFans content in the children's home, refused to coparent with him, blamed him for not being able to make the parenting schedule work following her move, and refused to comply with the existing parenting plan. When accounting for all these actions and inactions, Tyler asserts the circumstances were materially changed beyond Stephanie's move to Fairbury.

Based on our de novo review of the record, we cannot say the district court abused its discretion in finding that a material change in circumstances occurred. We believe that if the district court had been aware of Tyler's and Stephanie's issues with amicable communication in conjunction with Stephanie's move to Fairbury at the time of its initial decree, the district court would have proceeded differently. See *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021) (finding that obstacles to father's visitation with child was circumstance that warranted modification).

At trial, both parties discussed their issues communicating with one another. Stephanie described their combative text messages as the reason she wanted the court to order them to communicate via a parenting app. She also spoke about her belief that Tyler's wife was the one responding to her text messages. Tyler then testified that he turned down Stephanie's attempts to sit down and discuss their problems "[b]ecause every conversation [was] very high conflict, and it never [came] out in any kind of resolution."

Tyler also discussed how their communication issues impacted his ability to get copies of the children's insurance cards from Stephanie. When he asked for the documents,

Stephanie sent him a picture of a "sticky note" that contained condescending and insulting language. Additionally, evidence was put forward showing that Tyler and Stephanie had issues updating one another on when the children were going to attend their summer daycare or instead stay home. And further evidence was adduced in the form of text messages that illustrated their inability to compromise given Stephanie's move to Fairbury.

In addition to their communication problems, Stephanie's move created an obstacle to Tyler's utilizing his parenting time. While Tyler and Stephanie do not agree on the exact amount of time it takes to get to Fairbury from Lincoln, they both agree it is more than an hour. Therefore, with Tyler's being responsible for transporting the children to and from his home, he must account for several additional hours of travel, which consequently interferes with his work schedule. While Tyler testified that his wife has more flexibility to drive the farther distance to pick up the children, he asserted the additional travel time reduces the amount of time he spends with his two oldest children by nearly half.

Additionally, the GAL's report corroborated the difficulties Tyler and Stephanie had in communicating and the obstacles presented by Stephanie's move to Fairbury.

Based on this record, we determine the district court did not abuse its discretion in finding a material change in circumstances.

## Best Interests

[10-12] When determining the best interests of the child in the context of custody, a court must consider, *at a minimum*, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child

abuse or neglect or domestic intimate partner abuse. *Jones v. Jones*, 305 Neb. 615, 941 N.W.2d 501 (2020). Other relevant considerations include stability in the child's routine; minimalization of contact and conflict between the parents; the general nature and health of the individual child; the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. See *id.* See, also, *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004). No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Jones v. Jones, supra.* The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made. *Id.*

[13] With these legal standards in mind, we again point out that the district court's order did not provide any analysis regarding the children's best interests other than the intrastate move between Lincoln and Fairbury, which is approximately "70 ish minutes." We take this opportunity to discourage this practice. While we recognize that the district court is not necessarily obligated to provide a detailed analysis in a modification of custody case, it is the best practice for a district court to provide some detailed analysis in determining what is in the best interests of the children. Few areas of the law present more impactful situations than custody arrangements for children.

[14,15] While the absence of this analysis is disappointing and unfortunate, it is not dispositive, however, because the Supreme Court has recognized that even when a finding is not expressly made by a trial court, an appellate court, in its de novo review, may make such a finding if the evidence supports it. See *id*. However, we do note that when the

district court does not provide an analysis, we can make little application of our general rule that in our de novo review, we consider, and may give weight to, the fact that the trial court saw and heard the witnesses. See *Weaver v. Weaver*, 308 Neb. 373, 954 N.W.2d 619 (2021). Despite this, after our de novo review of the record in this case, we cannot say the district court abused its discretion in finding that Tyler's having physical and legal custody of the children was in their best interests.

[16,17] The record clearly demonstrates that Tyler and Stephanie have difficulty coparenting. These issues go beyond ordinary communication problems and bleed into acts of deception. Stephanie did not tell Tyler that she was moving more than an hour away from Lincoln until she had already closed on the house in Fairbury. Although Stephanie claimed she did not anticipate this adversely affecting Tyler's parenting time because she was still planning to work in Lincoln, she had started to apply for remote jobs nearly 2 months prior. Then, without consulting Tyler, she removed B.J. and S.J. from their school in Lincoln and enrolled them in Fairbury schools. The Supreme Court has previously stated that the decisions of where a child will reside and attend school are fundamental decisions that require mutual agreement between parents who maintain joint legal custody. See *Vyhlidal v. Vyhlidal*, 311 Neb. 495, 973 N.W.2d 171 (2022). We have also stated that a parent's intentional refusal to promote and facilitate the other parent's involvement in a child's important educational, religious, and medical needs constitutes a significant factor to consider when making custody decisions. *Burton v. Schlegel*, 29 Neb. App. 393, 954 N.W.2d 645 (2021). By waiting to inform Tyler about her move and the two school-aged children's change in schools until the effects of her decisions were complete, Stephanie precluded Tyler from having any say in the matters. These decisions not only adversely affected his parenting time, but they also affected the children.

[18] The increased travel time between Lincoln and Fairbury conflicted with Tyler's work schedule and precluded him from making full use of his scheduled parenting time. Although not a completely determinative factor, the promotion and facilitation of a relationship by one parent with the other parent is a factor that may be considered when awarding custody. *Id.* Despite Stephanie's claim that she had no intention of diminishing Tyler's parenting time with her move, her unilateral actions resulted in precisely that outcome.

More so, Stephanie also testified that the move was "not ideal" for the children because they were "very used to" the prior custody arrangement. The GAL report expanded on this sentiment by indicating that the children had "clearly been affected" by the move because they were sad about spending less time with Tyler. Further, the GAL reported that the move "seem[ed] to have put stress on the two older children since they [were] not able to see [Tyler] as much as they previously had." Stephanie was seemingly unconcerned about these effects because the report also indicated that she questioned the benefits the children received from having a relationship with Tyler. Based on this information, it is not apparent that Stephanie was acting in the best interests of the children by moving to Fairbury, changing their schools, and doing so without informing Tyler beforehand.

Additionally, the record displayed other concerning behaviors by Stephanie that support the district court's decision that the change in custody was in the children's best interests. Tyler testified about Stephanie's social media post wherein she discussed her boyfriend "putting his hands on her." Tyler stated this boyfriend still stayed with Stephanie from time to time, which the children corroborated when speaking with the GAL. They told the GAL that the boyfriend resided in Stephanie's home "'most of the time'" when he was not "'out in the truck.'" Also concerning is Stephanie's explicit sexual posts on her OnlyFans account and her subsequent

inconsistent testimony about when she had an account, the quantity of her posts, and when she posted the content from the account.

Given Stephanie's failure to notify Tyler about her move until after she already closed on her house, her unilateral decision to change the two school-aged children's school in the middle of the school year, her posting explicit sexual content on her OnlyFans account, her denial in her affidavit that she did not have such an account, the alleged domestic violence in her home, and the adverse effects the move had on the children, we are unable to find the district court abused its discretion in finding that Tyler's having physical and legal custody of the children was in their best interests.

## CONCLUSION

We conclude the district court did not abuse its discretion in awarding Tyler physical and legal custody of the children. Accordingly, we affirm the decision of the district court.

Affirmed.