Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/21/2025 09:07 AM CDT

- 820 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

State of Nebraska on behalf of Paul O. and
Nickolas O., minor children, appellee, v.
Samuel O., appellee, and Fannie W., appellant.

___ N.W.3d ___

Filed October 14, 2025.    No. A-24-819.

1. **Rules of the Supreme Court: Appeal and Error.** Pursuant to Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2024), the cross-appeal section of an appellate brief must set forth a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts.

2. ____: ____. When a brief of an appellee fails to present a proper cross-appeal pursuant to Neb. Ct. R. App. P. § 2-109 (rev. 2024), an appellate court declines to consider its merits.

3. **Paternity: Appeal and Error.** In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion.

4. **Child Support: Appeal and Error.** An appellate court reviews child support determinations de novo on the record, but the trial court's decision will be affirmed absent an abuse of discretion.

5. **Child Custody.** When determining the best interests of the child in the context of custody, a court must consider, at a minimum, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse.

6. **Child Custody: Visitation.** No single factor is determinative, and different factors may weigh more heavily in the court's analysis,

- 821 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

depending on the evidence presented in each case. The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made.

7. **Parent and Child: Armed Forces.** A spouse's absence due to military deployment in itself cannot determine a child's best interests.

8. **Child Custody: Intent.** A parent's intentional refusal to promote and facilitate the other parent's involvement in a child's important educational, religious, and medical needs constitutes a significant factor to consider when making custody decisions.

9. **Visitation.** The best interests of the children are the primary and paramount considerations in determining parenting time.

10. ____. The Parenting Act provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests.

11. **Child Support: Insurance: Proof.** In calculating a party's child support obligation, the increased cost to a parent for health insurance for the child shall be prorated between the parents. The parent paying the premium receives a credit against his or her share of the monthly support, provided that the parent requesting the credit submits proof of the cost of health insurance coverage for the child.

12. **Child Support: Rules of the Supreme Court.** A court may deviate from the Nebraska Child Support Guidelines if their application in an individual case would be unjust or inappropriate; the court must specifically find that a deviation is warranted based on the evidence and state the reason for the deviation in the decree.

13. ____: ____. A deviation from the Nebraska Child Support Guidelines without a clearly articulated justification is an abuse of discretion.

Appeal from the District Court for Lancaster County: MATTHEW O. MELLOR, Judge. Affirmed in part, and in part reversed and remanded with directions.

David V. Chipman, of Monzón, Guerra & Chipman, for appellant.

Katherine J. Doering, Deputy Lancaster County Attorney, for appellee State of Nebraska.

- 822 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellee Samuel O.

Riedmann, Chief Judge, and Moore and Welch, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

Fannie W. appeals from the order of the district court for Lancaster County establishing paternity, custody, and support for her two minor children. Fannie assigns the court erred in awarding the parents joint physical custody, granting Samuel O. equal parenting time, and ordering her to pay child support. For the reasons stated herein, we affirm in part, and in part reverse and remand the cause with directions as set forth below.

## II. BACKGROUND

Fannie is the biological mother of two minor children, Paul O., born in 2015, and Nickolas O., born in 2019. In September 2024, the State of Nebraska filed a complaint against Samuel to establish paternity and child support of the children. Fannie and Samuel were never married and were not in a relationship at the time of the State's filing.

Samuel, by joint stipulation with the State, moved to add Fannie as a party to the action and filed an answer acknowledging paternity. He also filed a counterclaim against Fannie, seeking joint physical and legal custody of the children and requesting that the court determine parenting time and child support. Additionally, he filed a motion for temporary orders, requesting joint legal and physical custody and a child support determination.

A hearing was held on Samuel's motion for temporary orders in December 2023. Following this hearing, the court entered a temporary order granting Fannie and Samuel joint legal and physical custody, awarding Samuel the majority of parenting time, and ordering him to pay Fannie monthly child support of $122.

- 823 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

In January 2024, Fannie filed a motion for further temporary orders and to vacate the previous order. She requested that the court grant her physical custody of the minor children and recalculate the amount of Samuel's child support. Fannie also filed an answer and counterclaim asking that the court award her attorney fees, establish Samuel's paternity of the children, determine Samuel's temporary and permanent parenting time, award her both temporary and permanent primary legal and physical custody, and award her temporary and permanent child support.

A hearing was held on Fannie's motion for temporary orders. The court entered an order adopting Fannie's proposed temporary parenting plan but otherwise denied her motion to vacate the prior order. This parenting plan maintained temporary joint legal custody but gave Fannie the final say in the event of an impasse. It awarded Fannie temporary primary physical custody of the minor children and granted Samuel parenting time every other weekend from Saturday at 9 a.m. to Monday at either 9 a.m. or the start of school, and every Monday from 6 p.m. to Wednesday at 3 p.m.

A trial was held in August 2024. The evidence showed that Fannie and Samuel had lived together on-and-off throughout their relationship and had two children together, Paul and Nickolas. In 2019, Samuel enlisted in the Army National Guard. Between April and December, Samuel was at boot camp or technical school for training. Then, from May 2021 to March 2022, Samuel was deployed. During both periods of Samuel's out-of-state military service, the children were in Fannie's sole physical custody.

While Fannie and Samuel were in a seemingly monogamous relationship, Samuel entered into a relationship with Aketch O. At the same time Fannie was pregnant with Nickolas, born in October 2019, Aketch was pregnant with Samuel's child, born in January 2020. Fannie and Samuel ultimately separated after Fannie's discovery of Samuel's infidelity.

- 824 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

At the time of trial, Samuel and Aketch were not legally married but had lived together for 2 years and had two children. There was evidence that Paul and Nickolas had an affectionate relationship with Samuel and that they would readily go to him with their concerns, issues, or needs, and Aketch testified she also had a good relationship with Paul and Nickolas. Both Samuel and Aketch testified that their children also had a close relationship with Paul and Nickolas and that their oldest child and Nickolas enjoyed spending time together due to their closeness in age.

Both Samuel and Aketch testified that, prior to the temporary orders, Fannie frequently denied Samuel time with the children and his visitation with them "depend[ed] on how [Fannie] felt." According to their testimony, Fannie once kept the children from Samuel for over a month, and on various other occasions, he went more than a week without seeing them because Fannie withheld them from him. Also, Samuel testified that, even after the temporary order, he needed to call the police to get custody of the children because Fannie did not "want to follow the court order."

The evidence also showed that Samuel worked 2:30 to 11 p.m. Monday through Friday and that he was required to report for National Guard duty one weekend per month and for 2 weeks once every year. On weekdays during Samuel's parenting time under the temporary orders, Paul and Nickolas had spent weekday mornings with Samuel, during which he got them ready, made them breakfast, and took them to school. After Samuel went to work in the afternoon, Aketch would pick up the children from school, help them with their homework, and get them ready for bed.

However, three nights a week, Aketch worked from 6:45 p.m. to 7:15 a.m. Her workdays fluctuated, but she typically worked Wednesday, Thursday, and Friday. While Aketch worked, during Samuel's parenting time, her two children, as well as Paul and Nickolas, went to Samuel's mother's

- 825 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

house at 5:45 p.m. and stayed there until Samuel picked them up sometime after 11 p.m. When he came to pick them up, the children would be awakened and taken to Samuel's home to go back to sleep.

Fannie testified that sleep disruption during Samuel's parenting time under the temporary orders caused the children to be tired and resulted in Paul's crying more, missing school, and performing poorly in school. However, Aketch testified she did not believe the arrangement caused disruption to the children's schooling, nor did she notice any difficulties with the children's going to school the day after they stayed at Samuel's mother's home. Also, both Samuel and Aketch agreed that Paul rarely missed school while in their care and that Paul's five, or fewer, absences were caused by health complications.

The evidence further showed that, at the time of trial, Fannie worked more than 40 hours per week as a certified nursing assistant from 11 p.m. to 7 a.m. However, she had recently graduated and obtained her licensed practical nursing degree. She was actively applying for new jobs that would require her to work from 6 a.m. to 6 p.m., or 6 a.m. to 3 p.m.

In her current role, Fannie was able to get the children ready for school, transport Paul to and from school, help them with their homework, feed them dinner, and take them to their extracurricular activities. She left for work after the children were asleep, and her mother, who had moved in with her in April 2024, then cared for the children overnight.

Further, the testimony showed that Fannie had been responsible for enrolling the children in school and extracurricular activities and establishing their medical and dental care. Paul and Nickolas attended the same school but were in different grades. Paul's schoolday went from 7:45 a.m. to 2:55 p.m., and Nickolas' schoolday was from 8:30 a.m. to 2:30 p.m. Nickolas had a speech issue that required him to start preschool early and to be placed on an individual

- 826 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

education plan (IEP). Although Fannie has attended all of Nickolas' IEP meetings, she testified that she had never known Samuel to attend one. On the other hand, Samuel testified that Nickolas' teacher had gone to Fannie's home for the IEP meetings, but that Fannie would not allow Samuel to "do it at her house," so he attempted to arrange with Nickolas' teacher to meet at the school instead.

Fannie also testified that Samuel had rarely taken the children to their appointments and that there were issues transporting Paul to his extracurricular activities during Samuel's parenting time. She also stated she had discussed with Samuel the idea of Paul's starting therapy but did not inform Samuel she had found Paul a therapist, who it was, or where the therapist was located. Furthermore, Fannie failed to inform the therapist that she and Samuel shared joint legal custody of Paul under the temporary orders.

Samuel testified that he had previously taken the children to one dentist appointment. He explained that he had offered to take the children to other appointments, but Fannie would not "ever give [him] a chance" and "never inform[ed] [him] of any" appointments. They shared a "family calendar," but Fannie did not put the children's doctor appointments on it. Similarly, he testified that there were no difficulties with getting Paul to his extracurricular activities until Fannie "decides [she] don't [sic] want to cooperate." He explained that he had not been on the email list for Paul's basketball schedule when the venue for a game had been changed and that when he asked Fannie if anything had been changed, she told him to "[g]o figure it out."

The evidence also showed Samuel had health insurance through his employer, and he testified he paid for a family health insurance plan that covered Nickolas and Paul, as well as one of his other children. Fannie, however, requested that she be allowed to provide the children's health insurance through Medicaid.

- 827 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

Ultimately, Samuel requested that the court award the parents joint legal and physical custody and grant him parenting time with the children on an alternating weekly basis. Fannie requested that the parents share joint legal custody but that she be granted primary physical custody and that Samuel be awarded parenting time every other weekend during the school year and every other week during the summer.

The district court entered an order in September 2024, finding that Samuel was the natural father of the minor children, awarding the parents joint legal and physical custody, and awarding parenting time on an alternating weekly basis. Also, Fannie was ordered to pay $163 per month in child support and Samuel was ordered to pay $2,000 of Fannie's attorney fees.

Fannie filed a motion to alter or amend, requesting that the court alter its order as it pertained to legal and physical custody, parenting time, and child support. After a hearing on the motion, the district court entered an order denying Fannie's motion as it pertained to custody and parenting time but modifying its child support order so that Fannie would pay $150 per month in child support for two children and $94 per month when there was only one minor child. Fannie timely appealed, and Samuel attempted to cross-appeal.

## III. ASSIGNMENTS OF ERROR

Fannie assigns, restated, the district court erred in (1) awarding joint physical custody of the minor children, (2) awarding the parents equal parenting time contrary to the children's best interests, and (3) ordering she pay Samuel child support.

[1,2] Samuel attempted to raise a cross-appeal challenging the attorney fees awarded to Fannie, but he failed to prepare his brief on cross-appeal as a separate section headed "'Brief on Cross-Appeal'" and failed to prepare it in the same manner and under the same rules as the brief for appellant. See

- 828 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

Neb. Ct. R. App. P. § 2-109(D)(4) (rev. 2024). Pursuant to § 2-109(D)(4), the cross-appeal section of an appellate brief must set forth a table of contents, a statement of the case, assigned errors, propositions of law, and a statement of the facts. Although Samuel's brief contains a "Summary of Argument on Cross Appeal" and "Argurment [sic] on Cross Appeal," it does not contain the other requirements. Brief for appellee Samuel O. at 17. When a brief of an appellee fails to present a proper cross-appeal pursuant to § 2-109, an appellate court declines to consider its merits. *Prinz v. Omaha Operations*, 317 Neb. 744, 11 N.W.3d 641 (2024). We do not address it further.

## IV. STANDARD OF REVIEW

[3] In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *Kee v. Gilbert*, 32 Neb. App. 1, 992 N.W.2d 486 (2023).

[4] An appellate court reviews child support determinations de novo on the record, but the trial court's decision will be affirmed absent an abuse of discretion. *Id.*

## V. ANALYSIS

### 1. Joint Physical Custody

Fannie assigns that the district court erred in awarding her and Samuel joint physical custody. She asserts it would have been in the children's best interests to award her primary physical custody.

[5] The Parenting Act "presumes the critical importance of the parent-child relationship in the welfare and development of the child and that the relationship between the child and each parent should be equally considered unless it is contrary to the best interests of the child." Neb. Rev. Stat. § 43-2921 (Reissue 2016). When determining the best

- 829 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

interests of the child in the context of custody, a court must consider, *at a minimum*, (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *Janda v. Janda*, 32 Neb. App. 953, 9 N.W.3d 212 (2024).

[6] Other relevant considerations include stability in the child's routine; minimalization of contact and conflict between the parents; the general nature and health of the individual child; the moral fitness of the child's parents, including sexual conduct; respective environments offered by each parent; the age, sex, and health of the child and parents; the effect on the child as a result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and parental capacity to provide physical care and satisfy educational needs of the child. *Id*. No single factor is determinative, and different factors may weigh more heavily in the court's analysis, depending on the evidence presented in each case. *Id*. The one constant is that the child's best interests are always the standard by which any custody or parenting time determination is made. *Id*.

Here, the court found the children's best interests were served through both parents' ongoing involvement. The court did not elaborate what specific facts formed the basis for its conclusion, a practice which we discouraged in *Janda, supra*. Unlike the lower court in *Janda*, however, the district court here made a finding that it was in the best interests of the children to be placed in the joint physical custody of their parents. Fannie argues this was an abuse of discretion for two reasons: (1) Samuel's work schedule prevents him from parenting the children five out of the seven nights he has them

- 830 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

and (2) she has always been the primary caregiver. We therefore limit our analysis to whether these two concerns should have precluded the district court from awarding Fannie and Samuel joint physical custody.

### (a) Samuel's Work Schedule

Fannie contends Samuel's work schedule prevents him from spending time with the children and requires they be in the care of someone other than a parent during the majority of his parenting time. She also argues his work schedule is disruptive to the children's sleep and causes them to be "very tired" and "overly emotional." Brief for appellant at 15.

Fannie urges us to follow *Ritter v. Ritter*, 234 Neb. 203, 450 N.W.2d 204 (1990), and find that due to Samuel's work schedule, the district court erred in awarding joint physical custody. We acknowledge that the amount of time that a parent is able to devote to a child is a consideration in resolving a child custody dispute, and we thus take this opportunity to contrast the present case to the situation in *Ritter, supra*.

We first note that *Ritter* was decided prior to *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019), which disapproved of the blanket rule disfavoring joint custody. However, *Ritter* is instructive insofar as it relates to Paul's and Nickolas' best interests.

In *Ritter, supra*, the Nebraska Supreme Court reversed the decision of the trial court, which had awarded sole custody of the minor child to the father, and instead awarded sole custody to the mother. In that case, the father's work schedule required the child to be in the care of a babysitter for 17 to 18 hours of the day, 5 days per week. On the other hand, the mother had an established routine with the child, which included using a daycare center for childcare 9 hours per day while she worked, and she was able to call upon her parents, the child's grandparents, for help if needed. See *id*. The court also noted that awarding custody to the father would separate the minor child from his half sister with whom he had a strong sibling bond,

- 831 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

which would be contrary to his best interests. *Id*. Because of these issues, among others, the court found it was in the child's best interests to award sole custody to the mother. *Id*.

Here, although we recognize Samuel's work schedule requires that he be away from the children weekday evenings, Samuel has an established childcare routine in which Paul and Nickolas are supervised by Aketch for 8 to 9 hours per day, rather than 17 to 18 hours. He is also able to call upon his mother for help supervising the children on the three nights per week that Aketch works.

Although Fannie takes issue with the fact that Paul and Nickolas are being cared for by someone other than Samuel during his parenting time, Neb. Rev. Stat. § 43-2923 (Reissue 2016) states that the best interests of a child require that

> the child's families and those serving in parenting roles remain appropriately active and involved in parenting with safe, appropriate, continuing quality contact between children and their families when they have shown the ability to act in the best interests of the child and have shared in the responsibilities of raising the child.

Aketch testified at trial that she was responsible for caring for Paul and Nickolas the weekday evenings during Samuel's parenting time and that she had a close and positive relationship with both children. We find that Aketch has served in a parenting role regarding Paul and Nickolas and is included within the meaning of § 43-2923. Although the children will spend much of Samuel's afterschool parenting time with Aketch, it is not contrary to their best interests to have "continuing quality contact" with her. See *id*.

We also note that both Fannie and Samuel are reliant on others to help supervise the children during their parenting time. Fannie's mother typically supervised the children while Fannie worked overnight. Further, Fannie testified she was applying for new jobs. We note the new schedule would require someone other than Fannie to supervise the children in the mornings, get them ready for school, and potentially

- 832 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

supervise them after school as well. We acknowledge this reality to demonstrate that there are very few situations in which working parents will not be reliant on the assistance of nonparents in caring for their children. A custody arrangement that requires this type of assistance is not necessarily contrary to the child's best interests.

Further, Samuel and Aketch's children are included among Paul and Nickolas' family, and the evidence showed that, like the child in *Ritter, supra*, the children had close relationships with their half siblings. Joint physical custody prevents Paul and Nickolas from being separated from, and assists them in maintaining contact with, their half siblings, in accordance with their best interests. See § 43-2923. See, also, *Citta v. Facka*, 19 Neb. App. 736, 812 N.W.2d 917 (2012) (sound public policy to keep siblings together).

Fannie also argues that Samuel's work schedule caused the children to become very tired and overly emotional because the children's sleep had been interrupted by Samuel's picking them up from his mother's home after getting off work. However, this assertion is unsupported by the record.

Under the original temporary order, which was in place for approximately 2 months, Samuel's parenting time always ended on Sunday afternoons. During the subsequent approximately 7 months, the parties operated under the second temporary order, in which Samuel was awarded parenting time every other weekend and every Monday through Wednesday afternoon. Samuel did not work on weekends, and Aketch did not work on Tuesday nights. Thus, under the temporary orders, the children were never returned to Fannie's physical custody after a night in which their sleep had been interrupted due to Samuel's work schedule.

Moreover, under the second temporary order, under which the parents operated during the majority of this proceeding, Samuel had parenting time only on weekends and Monday and Tuesday nights. As stated, neither Samuel nor Aketch worked on weekends, and Aketch testified she never

- 833 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

worked Tuesday nights, nor did she typically work Monday nights. Consequently, under the second temporary order, the children's sleep was not interrupted during Samuel's parenting time other than on an occasional Monday night when Aketch worked.

For these reasons, any assertion by Fannie that the children had become extremely tired or overly emotional because of sleep interruption caused by Samuel's work schedule is unfounded. We conclude that Samuel's work schedule does not cause the award of joint physical custody to be contrary to Paul's and Nickolas' best interests.

### (b) Fannie as Children's Primary Caregiver

Fannie argues that the district court abused its discretion by not awarding her primary physical custody because the evidence at trial showed she was the children's primary caregiver. She asserts that she has spent more time with the children because Samuel's military service has caused him to be gone for extended periods of time and that she has historically taken care of the children's medical and educational needs.

[7] The evidence showed Samuel had been gone from Nebraska, and had not seen the children, for a total of nearly 2 years due to his military training and deployment. A spouse's absence due to military deployment in itself cannot determine the child's best interests. Neb. Rev. Stat. § 43-4607 (Reissue 2016) states:

> In a proceeding for custodial responsibility of a child of a service member, a court may not consider a parent's past deployment or possible future deployment in itself in determining the best interest of the child but may consider any significant impact on the best interest of the child of the parent's past or possible future deployment.

Here, Samuel had returned from deployment in March 2022 and had been back in Nebraska for more than a year before this action was filed. There was no evidence that Samuel's training and deployment had impacted the children's best

- 834 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

interests, other than Fannie's being the children's primary caretaker during his absences. There was also no evidence that Samuel would be deployed again or regularly spend significant periods of time away from the children in the future.

Moreover, both Samuel and Aketch testified that Samuel desired to spend more time with the children, but that it was Fannie who often interfered or refused. Fannie did not dispute their testimony. By interfering with Samuel's and the children's relationship, Fannie acted in spite of the children's best interests. See *Janda v. Janda*, 32 Neb. App. 953, 9 N.W.3d 212 (2024) (although not determinative factor, promotion and facilitation of relationship by one parent with other parent may be considered when awarding custody).

Although we agree with Fannie that the evidence showed that she was historically responsible for enrolling the children in school, medical and dental care, and extracurricular activities, Samuel testified that he had tried to become involved in the children's care and that Fannie was not cooperative. He had offered to take the children to medical appointments, but Fannie neither informed him of the appointments nor put the appointments on the family calendar. His testimony was supported by Fannie's admission that she had enrolled Paul in counseling without communicating any details to Samuel.

[8] Samuel also testified that he had tried to participate in the children's education, particularly with regard to Nickolas' IEP meetings and Paul's extracurricular activities, but that Fannie had again interfered or was uncooperative. We have previously stated that a parent's intentional refusal to promote and facilitate the other parent's involvement in a child's important educational, religious, and medical needs constitutes a significant factor to consider when making custody decisions. See *Burton v. Schlegel*, 29 Neb. App. 393, 954 N.W.2d 645 (2021).

We recall that the district court found that both parents were fit and proper persons to be awarded joint legal and

- 835 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

physical custody of the children and that the best interests of the children "will be maintained through the ongoing involvement of both [Fannie] and [Samuel] with the children." Joint physical custody allows for the ongoing and equal involvement of both parents and limits Fannie's ability to interfere with Samuel's participation in parenting activities. We therefore conclude the district court did not abuse its discretion in awarding Fannie and Samuel joint physical custody of the children.

## 2. Parenting Time

Fannie assigns the district court erred in granting the parents equal parenting time. She again takes issue with Samuel's work schedule and the time it allows him to spend with the children, as well as the fact that it requires the children's sleep to be interrupted three nights per week during his parenting time.

The Parenting Act does not require any particular parenting time schedule to accompany an award of either sole or joint physical custody. See Neb. Rev. Stat. § 43-2920 et seq. (Reissue 2016 & Cum. Supp. 2024). The trial court has discretion to set a reasonable parenting time schedule. *Thompson v. Thompson*, 24 Neb. App. 349, 887 N.W.2d 52 (2016). The determination of reasonableness of a parenting plan is to be made on a case-by-case basis. *Wolter v. Fortuna*, 27 Neb. App. 166, 928 N.W.2d 416 (2019).

[9,10] The best interests of the children are the primary and paramount considerations in determining parenting time. See *Winkler v. Winkler*, 31 Neb. App. 162, 978 N.W.2d 346 (2022). The Parenting Act provides that the best interests of a child require a parenting plan that provides for a child's safety, emotional growth, health, stability, physical care, and regular school attendance, and which promotes a child's continued contact with his or her families and parents who have shown the ability to act in the child's best interests. See § 43-2923(1) and (3). There exists a broad continuum of

- 836 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

possible parenting time schedules that can be in a child's best interests. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

Here, the district court awarded parenting time on an alternating week-on-week-off basis. This parenting time schedule is consistent with the court's express factual findings that both parents are fit and that the best interests of the children required the ongoing involvement of both Fannie and Samuel.

Although Fannie asserts Paul and Nickolas will spend much of Samuel's parenting time in the care of Aketch or Samuel's mother, we have explained that this is not contrary to their best interests. Rather, in accordance with their best interests, equal parenting time allows the children to maintain contact with Aketch and their half siblings.

However, Fannie argues, again, that Samuel's work schedule causes instability in the children's routine by requiring the children's sleep be interrupted, typically on school nights, and that it causes them to be very tired and emotional. She asserts that it is consequently within their best interests to award Samuel parenting time every other weekend during the school year. She cites to various cases from other jurisdictions, and one from our court, which she asserts stand for the proposition that "parents who have to awaken their children at odd hours due to their work schedule should not be granted custody and their parenting time should accordingly be crafted so to avoid such disruption to the children." Brief for appellant at 19.

Although none of these cases are binding on our decision, for the sake of completeness, we distinguish the case at hand from our prior, unpublished opinion, *Henson v. Carosella*, No. A-20-096, 2020 WL 6878566 (Neb. App. Nov. 24, 2020) (selected for posting to court website). In *Henson, supra*, the evidence showed that the father's work schedule required the 1-year-old child to wake up and be delivered to childcare by 5:30 a.m. and that the child had a previously

- 837 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
33 NEBRASKA APPELLATE REPORTS
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

established routine wherein he slept from approximately 8 p.m. to 7 or 8 a.m. The district court found the father's work schedule would require the child's routine be disrupted and, therefore, overnight parenting time was not in the child's best interests. See *id*. On appeal, we upheld the district court's decision to award the father parenting time every other weekend and two evenings per week, finding no abuse of discretion. See *id*.

In the case at hand, the evidence did not support a finding that Paul and Nickolas had an established routine that was disrupted by Samuel's waking them up and taking them to his home sometime after 11 p.m. three nights during the week. Moreover, the child in *Henson, supra*, was just over 1 year old and was required to be delivered to childcare early in the morning. Here, the children are not infants, and they are being momentarily awakened before going back to sleep at Samuel's home for the rest of the night.

Further, Samuel's work schedule requires that the children's sleep be interrupted only on nights when Aketch works. The evidence showed she typically works three nights per week, Wednesday, Thursday, and Friday, and only two of these nights are school nights. Moreover, we note that Fannie testified that Paul's school attendance and performance had suffered under Samuel's childcare arrangement. However, she introduced no evidence to corroborate her testimony. Rather, her testimony was refuted by Aketch, who testified she did not observe any difficulties with the children's going to school after a night on which they were picked up from their grandmother's home. Also, both Samuel and Aketch testified that Paul's minimal school absences during Samuel's parenting time were attributable to health concerns. We have also explained Fannie's claim that being awakened caused the children to be tired or emotional was unfounded. The evidence does not support a finding that Paul or Nickolas has been negatively affected by the sleep interruption caused by Samuel's work schedule.

- 838 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

It is true that Samuel's work schedule requires that the children be cared for by others on weekday evenings while he is at work and that they be awakened during the night 3 days per week. However, when all the evidence is considered in light of Paul's and Nickolas' best interests, we cannot find the parenting time awarded here was an abuse of discretion.

### 3. Child Support

Fannie assigns the court abused its discretion by providing a credit to Samuel for the cost of the children's health insurance and by ordering her to pay child support.

After a hearing on Fannie's motion to alter or amend, the district court amended its original child support order. The Nebraska Child Support Guidelines calculation adopted by the court in its amended order shows that a $78 credit was given to Samuel for the cost of Paul's and Nickolas' health insurance coverage. The child support calculation explains this number was calculated by considering the total cost for adding children to Samuel's health insurance, $117, and dividing the cost by the three children he testified were covered under the policy (Samuel and Aketch's other child was on Aketch's policy), which came out to be $39 per child. This amount was doubled to calculate the cost of coverage for two children, Paul and Nickolas, which was $78.

Also, although the child support calculation attached to the order indicates Samuel owes child support to Fannie in the amount of $150 a month for two children and $94 a month for one child, the amended order required Fannie to pay Samuel child support in the amount of $150 per month for two children and $94 per month for one child. The court's order does not provide any explanation for this deviation.

### (a) Health Insurance Credit

[11] According to the child support guidelines, in calculating a party's child support obligation, the increased cost to the parent for health insurance for the children of the

- 839 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

parent shall be prorated between the parents. See Neb. Ct. R. § 4-215(A) (rev. 2020). The parent paying the premium receives a credit against his or her share of the monthly support, provided that the parent requesting the credit submits proof of the cost of health insurance coverage for the child. See *id*.

In her brief, Fannie argues that the court erred in awarding Samuel a credit against his share of monthly support for the cost of insurance coverage for Paul and Nickolas because the health insurance plan also covered one of his other biological children. She asserts that because the premium for child coverage is the same regardless of the number of children covered, and because Samuel would enroll in this family health insurance plan for the benefit of his other child irrespective of Paul and Nickolas, Samuel incurs no additional cost to provide coverage for Paul and Nickolas and should not be awarded credit. Samuel asserts that the district court did not abuse its discretion and urges us to affirm its award of child support.

We agree with Fannie that Samuel would pay the same premium even if Paul and Nickolas were not covered; however, the district court appears to have given Samuel credit for two-thirds of the cost of the insurance premium, which we find strikes an equitable balance. Such an arrangement allows a percentage of the premium paid to be figured into the total obligation, helping to offset Samuel's costs, but it does not place the entire burden on Fannie where Samuel benefits from having his other child covered as well.

We approved of a similar approach in *Eicke v. Eicke*, No. A-20-081, 2021 WL 1186214 (Neb. App. Mar. 30, 2021) (selected for posting to court website). In *Eicke, supra*, the mother received a credit for the total cost of a health insurance premium that covered the three children of the parties, as well as the mother's two children from a previous relationship. The father argued on appeal that the mother should receive a reduced credit proportional to the number of

- 840 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

children from their marriage enrolled in the insurance plan, compared to the total number of children covered. See *id*. We agreed with the father's position, finding it was an appropriate balance, and awarded the mother credit for three-fifths of the total insurance premium cost. See *id*.

We accordingly reject Fannie's argument that, because Samuel incurs no additional cost for covering Nickolas and Paul in addition to his other child, Samuel is not entitled to a deduction for any health insurance premiums.

Fannie also argues that, because the "Dependents Currently Covered By Health Insurance" section on the insurance document introduced at trial is blank, Samuel failed to show that Paul and Nickolas were actually covered under the policy; thus, he failed to meet his burden of proof to receive credit for the increased cost of the insurance coverage. We reject this argument.

Although the exhibit on which Fannie relies does not indicate that the children were covered under the policy, it was dated October 2023. Samuel testified that initially, the National Guard provided coverage, but that at the time of trial in August 2024, he was providing coverage for the children through his employer. The exhibit identified what the cost of the premium would be for Samuel alone, along with the increased premium for dependent coverage. The child support guidelines require only that Samuel provide evidence of the cost to include the children on the policy. See § 4-215(A).

We find that Samuel met his burden of proving the additional cost to insure Paul and Nickolas and that the district court did not abuse its discretion in awarding him credit for two-thirds of the cost of the increased insurance premium.

### (b) Deviation Without Explanation

As noted above, the child support worksheet indicated that Samuel owed child support to Fannie, but the order following the motion to alter or amend required Fannie to pay

- 841 -

Nebraska Court of Appeals Advance Sheets
33 Nebraska Appellate Reports
STATE ON BEHALF OF PAUL O. & NICKOLAS O. v. SAMUEL O.
Cite as 33 Neb. App. 820

child support to Samuel. No explanation was provided for the deviation.

[12,13] In general, child support payments should be set according to the guidelines. See *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018). However, a court may deviate from the guidelines if their application in an individual case would be unjust or inappropriate. See *id*. The court must specifically find that a deviation is warranted based on the evidence and state the reason for the deviation in the decree. *Id*. Any deviation without a clearly articulated justification is an abuse of discretion. See *id*.

We agree with Fannie and the State that the district court abused its discretion by ordering Fannie to pay Samuel child support without articulating why it deviated from its calculations. We thus reverse this portion of the court's order and remand the cause to the district court with directions either to enter an order requiring Samuel to pay Fannie child support consistent with the adopted calculations or to provide a justification for its deviation.

## VI. CONCLUSION

For the foregoing reasons, we affirm the order of the district court but reverse the portion of the order pertaining to child support. We remand the cause with directions to enter an order consistent with this opinion.

Affirmed in part, and in part reversed
and remanded with directions.